# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 05-3054

_____

| | | |
|---|---|---|
| Ronald J. Speltz; June M. Speltz | * | |
| | * | |
| Petitioners, | * | |
| | * | |
| v. | * | Appeal from the |
| | * | United States Tax Court. |
| Commissioner of Internal Revenue, | * | |
| | * | |
| Respondent. | * | |

_____

Submitted: February 13, 2006
Filed: July 14, 2006

_____

Before LOKEN, Chief Judge, BOWMAN, and SMITH, Circuit Judges.

_____

SMITH, Circuit Judge.

Appellants Ronald and June Speltz ("Taxpayers") incurred substantial tax liability under the alternative minimum tax ("AMT") after exercising an incentive stock option. After the time of exercise, the stock value greatly declined. However, the tax liability remained. Taxpayers paid a portion of their tax liability and later made an offer-in-compromise ("OIC") to settle the balance. The Internal Revenue Service ("IRS") rejected the OIC. Taxpayers then appealed to the United States Tax Court, which granted summary judgment to the IRS. We affirm.

## I. *Background*

Ronald Speltz worked as an engineer and senior manager for McLeod USA Network Services, Inc., a regional telephone company in Iowa. In the 2000 tax year, he earned approximately $75,000 in wages. As part of his compensation, Speltz received incentive stock options ("ISOs") to acquire McLeod stock. During the 2000 tax year, Speltz exercised his ISOs to purchase 2,070 shares of McLeod stock for $34,254—$711,118 below the market value of the stock. Unfortunately, the stock price declined dramatically through the year, going from approximately $104.56 per share on March 10 to approximately $.80 per share on December 30. Eventually the Taxpayers sold the 2,070 shares for $1,647.

On their Form 1040 for the 2000 tax year, Taxpayers reported regular taxes of $18,678 and $224,869 in AMT. The large AMT resulted from inclusion of the entire $711,118 in the computation of the taxpayer's AMT liability notwithstanding the enormous decline in the stock's value. After credit for federal income tax withheld, the balance of Taxpayers' tax liability for year 2000 was $210,065. After an additional payment with the filing of their tax return, Taxpayers still owed $192,184.77. Taxpayers further whittled the balance paying $75,000 during 2001, receiving a $600 tax reduction for the year 2000, and receiving credit for overpayments for tax years 2001 and 2002 of $16,870 and $12,455 respectively.

In November 2001, Taxpayers submitted to the IRS a Form 656, Offer in Compromise ("OIC"). The OIC offered cash payment of $4,457, the cash value of Ronald Speltz's life insurance policy, to settle the remaining tax liability, which then exceeded $125,000. Taxpayers explained that they had insufficient assets and income to pay the full amount owed, gave examples of the lifestyle impact the liability caused, and expressed frustration over the unfairness of their situation.

Revenue Officer Robert Dallas notified Taxpayers by letter that their OIC had been reviewed and rejected because the IRS "determined that [Taxpayers] have the

ability to pay [their] liability in full within the time provided by law." Taking into account their net equity in assets of $77,948 and available future income of $113,568, Dallas determined Taxpayers' ability to pay was $191,516—an amount greater than the remaining balance of $148,744.64.

Taxpayers then requested a collection due process hearing to appeal the decision made by Dallas. The IRS Appeals Office issued a Notice of Determination that sustained the lien filing and rejected the OIC. Despite Taxpayers' arguments regarding collectibility, equity, hardship, and public policy, the Notice of Determination merely stated that "there is no pending legislation to retroactively adjust how the alternative minimum tax is computed."

Taxpayers then brought a petition for review in the United States Tax Court, contending that the IRS abused its discretion. The IRS moved for summary judgment but argued alternatively that if summary judgment were not granted, the Tax Court should remand the case for further consideration of the Taxpayers' OIC. The IRS essentially conceded that it erred in calculating the Taxpayers' ability to pay. Specifically, the IRS seemed to acknowledge that Dallas and the Appeals Office failed to follow the Internal Revenue Manual in making certain computations relating to the Taxpayers' ability to pay.

Taxpayers disputed the IRS's request for remand and argued that the Tax Court should enter an order that the OIC be accepted. The Tax Court instead granted the IRS's motion for summary judgment, concluding that "differences as to the calculation of [Taxpayers'] ability to pay installments are not material and do not preclude resolution of this case on summary judgment." The Tax Court noted that the Taxpayers may submit another OIC and that the Taxpayers' income and expenses may change. However, the Tax Court concluded that there was no abuse of discretion in declining to accept Taxpayers' OIC dated November 2, 2001.

## II. *Discussion*

26 U.S.C. § 7122(a) provides that "[t]he Secretary may compromise any civil . . . case arising under the internal revenue laws." In 1998, § 7122 was amended by adding subsection (c), which requires the IRS to "prescribe guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute." The post-1998 IRS regulations state that an OIC may be accepted on three grounds: (1) doubt as to liability; (2) doubt as to collectibility; and (3) promotion of effective tax administration. 26 C.F.R. § 301.7122-1(b); *see also* H.R. Conf. Rep. No. 105-599, at 289 (1998).[1] Taxpayers claim that their OIC should have been accepted due to doubt as to collectibility and promotion of effective tax administration.

---

[1] H.R. Conf. Rep. No. 105-599, at 289 (1998) provides

[T]he conferees expect that the present regulations will be expanded so as to permit the IRS, in certain circumstances, to consider additional factors (i.e., factors other than doubt as to liability or collectibility) in determining whether to compromise the income tax liabilities of individual taxpayers. For example, the conferees anticipate that the IRS will take into account factors such as equity, hardship, and public policy where a compromise of an individual taxpayer's income tax liability would promote effective tax administration. The conferees anticipate that, among other situations, the IRS may utilize this new authority to resolve longstanding cases by forgoing penalties and interest which have accumulated as a result of delay in determining the taxpayer's liability. The conferees believe that the ability to compromise tax liability and to make payments of tax liability by installment enhances taxpayer compliance. In addition, the conferees believe that the IRS should be flexible in finding ways to work with taxpayers who are sincerely trying to meet their obligations and remain in the tax system. Accordingly, the conferees believe that the IRS should make it easier for taxpayers to enter into offer-in-compromise agreements, and should do more to educate the taxpaying public about the availability of such agreements.

## A. *Reviewability*

Before reaching the merits, we must first address the Commissioner's argument that the agency's rejection of an OIC is an exercise of administrative discretion that is not subject to judicial review. In support, the Commissioner cites 26 U.S.C. § 7122(a), which states that "[t]he Secretary may compromise any civil . . . case arising under the internal revenue laws." The Commissioner contends that the word "may" means that the decision whether to accept or reject a compromise is made solely at the Secretary's discretion. Under the Commissioner's reasoning, the Secretary's discretion is unreviewable pursuant to the Supreme Court's decision in *Heckler v. Chaney*, 470 U.S. 821 (1985).

We disagree. The Secretary's discretion is not unfettered, as the regulations set forth "grounds for compromise," § 301.7122-1(b), and "special rules for evaluating offers to compromise," § 301.7122-1(c). The decision in *Heckler v. Chaney* dealt with § 701(a)(2) of the Administrative Procedure Act, and the FDA's decision not to initiate an enforcement action. 470 U.S. at 830. In the case at bar, the Tax Court was granted the power to review "any relevant issue relating to . . . an offer-in-compromise." 26 U.S.C. § 6330(c), (d)(1)(A). Under 26 U.S.C. § 7482, Congress granted courts of appeal authority to review Tax Court decisions and did not exclude offers-in-compromise. While the acceptance or rejection of an OIC may be discretionary, the IRS must follow statutory and regulatory criteria in exercising its discretion, and we may review the IRS's decision for an abuse of discretion. *See Olsen v. United States*, 414 F.3d 144, 150 (1st Cir. 2005); *see also* H.R. Conf. Rep. No. 105-599, at 266 (1998) ("Where the validity of the tax liability is not properly part of the appeal, the taxpayer may challenge the determination of the appeals officer for abuse of discretion."). Therefore, while the Commissioner is correct that "the Judicial Branch does not instruct the Executive Branch how to make executive decisions," *Orum v. Commissioner*, 412 F.3d 819, 821 (7th Cir. 2005), the Judiciary does decide whether the executive decisions conform to law or represent an abuse of executive discretion. *See id.*

## B. *Doubt as to Collectibility*

On the merits, the Taxpayers posit that the IRS abused its discretion by refusing the OIC for two reasons: (1) doubt as to collectibility; and (2) promotion of effective tax administration. We disagree.

"Doubt as to collectibility exists in any case where the taxpayer's assets and income are less than the full amount of the liability." 26 C.F.R. § 301.7122-1(b)(2). "A determination of doubt as to collectibility will include a determination of ability to pay." § 301.7122-1(c)(2)(i). The regulations require the Secretary to "permit taxpayers to retain sufficient funds to pay basic living expenses." *Id*. The permissible amount of basic living expenses "will be founded upon an evaluation of the individual facts and circumstances presented by the taxpayer's case" but "guidelines published by the Secretary on national and local living expense standards will be taken into account." *Id*.

Here, the Taxpayers argue that the IRS misapplied the regulations and the Internal Revenue Manual in computing the Taxpayers' basic living expenses. (Appellants' Br. at 31–36). Specifically, the Taxpayers argue that the IRS's failure to follow its own procedures caused it to conclude erroneously that the Taxpayers' ability to pay was greater than their liability. Taxpayers assert that a proper application of the procedures would have shown that the their liability exceeded their ability to pay. Taxpayers thus contend that the Tax Court's grant of summary judgment to the IRS was improper because a genuine issue of material fact remained as to the Taxpayers' ability to pay.

Taxpayers claim that the IRS calculated the Taxpayers' ability to pay at $141,943.[2] Because this is less than the Taxpayers' liability of $148,745,[3] Taxpayers contend that—according to the IRS's own numbers before the Tax Court—Revenue Officer Dallas erred when he concluded that the Taxpayers' ability to pay exceeded their liability. Thus, Taxpayers assert it was an abuse of discretion for the IRS to deny Taxpayers' OIC on the basis of erroneous computations that resulted in the erroneous conclusion that their ability to pay exceeded their tax liability.

However, before the Tax Court, the IRS suggested some revised computations and requested remand for further consideration of Taxpayers' OIC in the event that the IRS's motion for summary judgment was denied. Notably, the Taxpayers' response to summary judgment took the position that no remand was needed and instead asked the Tax Court to decide the case on the arguments presented. In the words of the Tax

---

[2]$82,224 + $59,719=$141,943.

$82,224 represents "the revised future income by allowing additional tax expense" that the IRS calculated before the Tax Court. (App. at 197–98). Officer Dallas determined the amount to be $113,568—a difference of $31,344.

$59,719 represents the net realizable equity calculated by the IRS before the Tax Court, which reduced the amount calculated by Officer Dallas. (App. at 196, n.8). Dallas calculated this figure to be $77,948—a difference of $18,229. The difference is the result of two corrections (1) allowing the Taxpayers to keep one of their two cars so that Ronald Speltz can drive to work so that he can earn a living and pay off his tax debt, *see* Internal Revenue Manual § 5.8.5.3.3; and (2) taking into account the penalties that would be assessed for early liquidation of their retirement assets, *see* Internal Revenue Manual § 5.8.5.3.8.

Officer Dallas determined that the Taxpayers' total ability to pay was $191,516, making the total difference in ability-to-pay calculations of the IRS before the Tax Court $49,573.

[3](App. at 198).

Court, the Taxpayers took the position that "they should not be required to pay any more than the amount that they offered." *Id*. As a result of Taxpayers' position, the Tax Court concluded that "differences as to the calculation of their ability to pay installments are not material and do not preclude resolution of this case on summary judgment." *Id*. The Tax Court held that no abuse of discretion occurred in declining to accept Taxpayers' OIC. The Tax Court noted that the Taxpayers may submit another OIC and that the Taxpayers' income and expenses may change.

We affirm the Tax Court's decision. The Tax Court did not review the question of whether the IRS may have abused its discretion in calculating the Taxpayers' ability to pay because it was never asked to do so. Because the issue was not presented to the Tax Court, it is not properly before us. As noted by the Tax Court, the Taxpayers may make another OIC to settle their tax liability. Should the IRS then erroneously compute the Taxpayers' ability to pay, the Taxpayers may then appeal that decision through the agency and the Tax Court, allowing each the opportunity to correct any alleged error before presenting the issue to this court.

## C. *Promotion of Effective Tax Administration*

The IRS is authorized to compromise tax liability for promotion of effective tax administration in two situations: (1) where "although collection in full could be achieved, collection of the full liability would cause the taxpayer economic hardship within the meaning of § 301.6343-1"; and (2) "where compelling public policy or equity considerations identified by the taxpayer provide a sufficient basis for compromising the liability." § 301.7122-1(b)(3)(i), (ii). With respect to the former, § 301.6343-1 states that the economic hardship condition applies if satisfaction of the liability "will cause an individual taxpayer to be unable to pay his or her reasonable basic living expenses." § 301.6343-1(b)(4)(i). With respect to the latter, a "[c]ompromise will be justified only where, due to exceptional circumstances, collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner." § 301.7122-1(b)(3)(ii). Further,

8

the latter requires the taxpayer "to demonstrate circumstances that justify compromise even though a similarly situated taxpayer may have paid his liability in full." *Id.*

We hold that the Taxpayers failed to establish that the IRS abused its discretion on the basis of the promotion of effective tax administration when it refused the Taxpayers' OIC. The factors outlined in 26 C.F.R. § 301.7122-1(c)(3)(iii)(A-C) that support a finding of "economic hardship" describe more dire circumstances than the contentions made by the Taxpayers. The same is true with respect to the "public policy and equity" claim, as the examples outlined in 26 C.F.R. § 301.7122-1(c)(3)(iv)(Examples 1-2), are distinguishable from the complaints set forth by the Taxpayers in this case. Based upon the record before us, we hold that the IRS did not abuse its discretion by refusing to accept the Taxpayers' $4,457 OIC.

### III. *Conclusion*

The IRS's rejection of the Taxpayers' OIC is reviewable for an abuse of discretion by this court. However, on this record, we find no abuse of discretion, and we affirm the judgment of the Tax Court.

_____