T.C. Memo. 2006-234

UNITED STATES TAX COURT

GARY W. McDONOUGH, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 1201-05L.                    Filed November 1, 2006.


<u>Asher B. Bearman</u>, <u>Jaret R. Coles</u>, <u>Jennifer A. Gellner</u>, and
<u>Terri A. Merriam</u>, for petitioner.

<u>Gregory M. Hahn</u> and <u>Thomas N. Tomashek</u>, for respondent.


MEMORANDUM FINDINGS OF FACT AND OPINION

HAINES, <u>Judge</u>:  Petitioner filed a petition with this Court
in response to a Notice of Determination Concerning Collection
Action(s) Under Section 6320 and/or 6330 for 1989 and 1991.[1]

_____

    [1]  Unless otherwise indicated, all section references are to
                                            (continued...)

Pursuant to section 6330(d), petitioner seeks review of respondent's determination. The sole issue for decision is whether respondent abused his discretion in sustaining the proposed levy action.

FINDINGS OF FACT

The parties' stipulation of facts and the attached exhibits are incorporated herein by this reference. The facts stipulated are so found.[2] Petitioner resided in Westminster, California,

_____

[1](...continued)
the Internal Revenue Code, as amended, and all Rule references are to the Tax Court Rules of Practice and Procedure. Amounts are rounded to the nearest dollar.

[2] Respondent reserved relevancy objections to many of the exhibits attached to the stipulations of fact. Fed. R. Evid. 402 provides the general rule that all relevant evidence is admissible, while evidence which is not relevant is not admissible. Fed. R. Evid. 401 defines relevant evidence as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." While the relevancy of some exhibits is certainly limited, this Court finds that the exhibits meet the threshold definition of relevant evidence and are admissible. The Court will give the exhibits only such consideration as is warranted by their pertinence to the Court's analysis of petitioner's case.

Respondent also objected to many of the exhibits on the basis of hearsay. Even if the Court were to receive those exhibits into evidence, they would have no impact on our findings of fact or on the outcome of this case.

when he filed his petition. Petitioner's wife, Mary Jane McDonough, filed separate tax returns for 1989 and 1991. Petitioner is 57 years old and is currently employed by the Los Angeles City Fire Department.

Petitioner invested in two partnerships organized and operated by Walter J. Hoyt III (Hoyt). The partnerships were Timeshare Breeding Syndicate Joint Venture (TBS) and Timeshare Breeding Service 1989-1 J.V. (TBS 1989-1).

From about 1971 through 1998, Hoyt organized, promoted, and operated more than 100 cattle breeding partnerships (Hoyt partnerships). Hoyt also organized, promoted, and operated sheep breeding partnerships. From 1983 until his removal by the Tax Court in 2000 through 2003, Hoyt was each partnership's general partner and tax matters partner. From approximately 1980 through 1997, Hoyt was a licensed enrolled agent, and as such, he represented many of the Hoyt partners before the IRS. In 1998,

Hoyt's enrolled agent status was revoked.  In 2001, Hoyt was
convicted of criminal charges relating to the promotion of these
partnerships.[3]

Petitioner reported partnership losses from TBS and TBS
1989-1 on his Form 1040, U.S. Individual Income Tax Return, for
1989 of $3,560 and $27,509, respectively, and for 1991 of $33,782
and $59,179, respectively.  Petitioner's claim to the losses
resulted in the underreporting of his 1989 and 1991 taxable
income.  On May 13, 2002, additional income taxes and interest

---

[3] Petitioner asks the Court to take judicial notice of
certain "facts" in other Hoyt-related cases and apply judicial
estoppel to "facts respondent has asserted in previous [Hoyt-
related] litigation". The Court will do neither.

A judicially noticeable fact is one not subject to
reasonable dispute in that it is either (1) generally known
within the territorial jurisdiction of the trial court or (2)
capable of accurate and ready determination by resort to sources
whose accuracy cannot reasonably be questioned.  Fed. R. Evid.
201(b).  Petitioner is not asking the Court to take judicial
notice of facts that are not subject to reasonable dispute.
Instead, petitioner is asking the Court to take judicial notice
of the truth of assertions made by taxpayers and the Commissioner
in other Hoyt-related cases.  Such assertions are not the proper
subject of judicial notice.

The doctrine of judicial estoppel prevents a party from
asserting a claim in a legal proceeding that is inconsistent with
a position successfully taken by that party in a previous
proceeding.  New Hampshire v. Maine, 532 U.S. 742, 749 (2001).
Among the requirements for judicial estoppel to be invoked, a
party's current litigating position must be "clearly
inconsistent" with a prior litigating position.  Id. at 750-751.
Petitioner has failed to identify any clear inconsistencies
between respondent's current position and his position in any
previous litigation.

were assessed against petitioner for 1989 and 1991 because of the underreporting.[4]

On August 23, 2002, respondent mailed petitioner a Letter L-1058, Final Notice of Intent to Levy and Notice of Your Right to a Hearing. The notice informed petitioner that respondent proposed to levy on his property to collect Federal income taxes owed for 1989 and 1991. The notice advised petitioner he was entitled to a hearing with respondent's Appeals Office to review the propriety of the proposed levy. On August 29, 2002, petitioner submitted a Form 12153, Request for a Collection Due Process Hearing. Petitioner indicated he would pursue an offer-in-compromise based on effective tax administration and would provide financial information upon request.

On March 11, 2003, Appeals received petitioner's original Form 656, Offer in Compromise, with a completed Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals, offering to pay $102,000 to compromise his outstanding tax liability. Petitioner offered to compromise his outstanding 1985-95 tax liabilities on the grounds of doubt as to

---

[4] TBS 1989-1, one of the partnerships in which petitioner invested, was involved in a consolidated case decided by this Court in Durham Farms #1, J.V. v. Commissioner, T.C. Memo. 2000-159, affd. 59 Fed. Appx. 952 (9th Cir. 2003). As a result of that case, computational adjustments were made, and, on May 13, 2002, additional income tax and interest were assessed against petitioner for 1989 and 1991.

liability and effective tax administration. On March 30, 2004, a section 6330 telephone hearing was held between Settlement Officer Linda Cochran (Ms. Cochran) and petitioner's attorney, during which petitioner's attorney argued that: (1) Appeals should accept the offer as a matter of equity and public policy; (2) the collection activity should be limited to taxes owed for 1989 and 1991 until the Tax Court decides the pending interest and penalty cases;[5] and (3) petitioner did not have an opportunity to be heard during the examination process.

On May 3, 2004, petitioner submitted to Ms. Cochran a revised Form 656 dated March 24, 2004, with a revised completed Form 433-A dated March 22, 2004, offering to pay $102,000 to compromise a liability of approximately $230,000 for 1987-96. Petitioner offered to compromise his outstanding tax liabilities not only for the years subject to the proposed collection action, but also for the liabilities arising from his 1987-88, 1990, and 1992-96 tax years.[6] The revised offer-in-compromise was

_____

[5] On Apr. 28, 2005, a stipulated decision was entered in McDonough v. Commissioner, docket. No. 18866-03, an interest abatement proceeding for 1989 through 1991, in which the Court ordered and decided that petitioner was not entitled to an abatement of interest under sec. 6404(e) for those years. To date, no decision has been made by the Court in McDonough v. Commissioner, docket No. 15239-04.

[6] At the time of the sec. 6330 hearing, the taxes, penalties, and interest for 1987-88, 1990, and 1992-96 were unassessed.

submitted on the grounds of doubt as to liability[7] and effective tax administration. Petitioner's revised Form 433-A reported no future income potential and assets with a total current value of $232,436, including the following:[8]

| Assets | Current Value |
|--------|--------------|
| Cash | $52,251 |
| Stock | 25,404 |
| Furniture | 960 |
| Vehicles | 64,821 |
| Real property(one-half interest)[1] | 89,000 |
| Total | 232,436 |

[1] The real property consisted of petitioner and his wife's house in Westminster, California and property they owned in Prescott, Arizona.

The Form 433-A also reported the following monthly items of income and expenses:

| Total Income | Amount |
|--------------|--------|
| Wages | $8,110 |

| Total Living Expenses | |
|--------------|--------|
| Food, clothing, and miscellaneous | $2,335 |
| Housing and utilities | 2,742 |
| Transportation | 705 |
| Health care | 1,747 |
| Taxes (income) | 1,225 |
| Life insurance | 28 |

---

[7] The doubt as to liability issues were not argued on brief and not considered here.

[8] Form 433-A states that each asset reported on the form should be valued at its "Current value", defined on the form as "The amount you could sell the asset for today".

Other expenses (attorney's fees)     728

Total                              9,510

Ms. Cochran determined that petitioner's net realizable equity in each of his reported assets was the same as its reported value except that she reduced the reported value of the stock and of each vehicle by 20 percent to reflect the assets' quick sale value and increased the reported values of petitioner's house and Arizona property because they had not been based upon current appraisals and current market prices.  Ms. Cochran summarized petitioner's assets and liabilities as follows:[9]

| Assets | Current Value |
| --- | --- |
| Cash | $52,251 |
| Stock | 20,323 |
| Furniture | 960 |
| Vehicles | 51,856 |
| Real property(one-half interest) | 171,500 |
| Total | 296,890 |

Using petitioner's average income over 38 months, she determined his monthly income was $11,012, not $8,110.  As to the reported expenses, Ms. Cochran disallowed actual expenses for food, clothing, and miscellaneous; housing and utilities; and transportation, and applied the national and local standard

---

[9] This amount does not include the value of petitioner's pension.  Petitioner testified that under his pension he will receive 82 percent of his current gross income of approximately $102,000 plus an annual cost of living raise of 2.5 percent

allowances to those items. Ms. Cochran increased the tax expense to reflect the increased amount of determined income. As adjusted, the following were the determined monthly items of expenses:

| Total Living Expenses | Amount |
|---|---|
| Food, clothing, and miscellaneous | $1,271 |
| Housing and utilities | 1,603 |
| Transportation | 471 |
| Health care | 1,747 |
| Taxes (income) | 2,000 |
| Life insurance | 28 |
| Other expenses (attorney's fees) | 728 |
| Total | 7,848 |

Ms. Cochran determined that petitioner's monthly excess income (i.e., monthly income less monthly expenses) was $3,164 ($11,012 - $7,848), his income potential for the next 116 months was approximately $367,024 ($3,164 x 116 months = $367,024),[10] and the reasonable collection potential was $663,914 (income potential of $367,024 + net realizable equity of $296,890).

On December 16, 2004, respondent issued petitioner a notice of determination sustaining the proposed levy with the provision that the collection activity will not include the collection of interest or penalties until the interest and penalty cases were

---

[10] In the notice, Ms. Cochran mistakenly used a 116-month factor to determine petitioner's income potential. On brief, respondent corrected the mistake by using a 48-month factor as required when a taxpayer makes a cash offer. As a result, petitioner's correct income potential was $151,872 ($3,164 x 48 = $151,872). See Internal Revenue Manual (IRM) sec. 5.8.5.5.

decided. The notice concluded petitioner's $102,000 offer-in-compromise was not an adequate collection alternative to the proposed levy because petitioner had the ability to pay $448,762.

The notice, citing Internal Revenue Manual (IRM) sections 5.8.11.2.1 and 5.8.11.2.2, stated that petitioner's offer did not meet the Commissioner's guidelines for consideration as an offer-in-compromise to promote effective tax administration. Specifically, the notice stated:

> Considered under economic hardship, the taxpayer has the ability to pay all assessed amounts and still have assets remaining with equity worth over $200,000 in addition to an income stream of over $350,000. The taxpayer's representative contended that the taxpayer was being evaluated for possible disability. The Settlement Officer noted, however, that no actual disability has been documented to date. The present offer, therefore, must be considered within the framework of present facts. As such, the taxpayer failed to document economic hardship with or without special circumstances, in accordance with Internal Revenue Manual 5.8.11.2.1.

> When considered under public policy or equity grounds, the taxpayer's Effective Tax Administration offer proposal fails to meet the criteria for such consideration under Internal Revenue Manual 5.8.11.2.2. For the reasons set forth in No. 1 above, the taxpayer's offer as an Effective Tax Administration offer based on public policy or equity grounds, therefore, cannot be considered.

In response to the notice of determination, petitioner filed his petition with this Court on January 19, 2005.

OPINION

I.  <u>Standard of Review</u>

Because the underlying tax liability is not at issue, this Court's review under section 6330 is for abuse of discretion. See <u>Sego v. Commissioner</u>, 114 T.C. 604, 610 (2000); <u>Goza v. Commissioner</u>, 114 T.C. 176, 182 (2000).  This standard does not require the Court to decide whether petitioner's offer-in-compromise should have been accepted, but whether respondent's rejection of the offer was arbitrary, capricious, or without sound basis in fact or law.  See <u>Woodral v. Commissioner</u>, 112 T.C. 19, 23 (1999); <u>Keller v. Commissioner</u>, T.C. Memo. 2006-166; <u>Fowler v. Commissioner</u>, T.C. Memo. 2004-163.

II.  <u>Petitioner's Offer-in-Compromise</u>

Section 7122(a) provides that "The Secretary may compromise any civil * * * case arising under the internal revenue laws".  Whether to accept an offer-in-compromise is left to the Secretary's discretion.  <u>Fargo v. Commissioner</u>, 447 F.3d 706, 712 (9th Cir. 2006), affg. T.C. Memo. 2004-13; sec. 301.7122-1(c)(1), Proced. & Admin. Regs.

The regulations under section 7122 set forth three grounds for the compromise of a tax liability:  (1) Doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration (ETA).  Sec. 301.7122-1(b), Proced.

& Admin. Regs. Doubt as to liability and doubt as to collectibility[11] are not at issue in this case.

Petitioner proposed an offer-in-compromise based on ETA, offering to pay $102,000 to compromise his estimated outstanding tax liability of $230,000. Petitioner argued that collection of the full liability would create economic hardship and that compelling public policy or equity considerations provide a sufficient basis for compromising the liability. Respondent determined petitioner's reasonable collection potential was $663,914, and thus, petitioner's offer did not meet the criteria for an offer-in-compromise based on ETA.

A tax liability may be compromised on the ground of ETA when: (1) Collection of the full liability will create economic hardship; or (2) compelling public policy or equity considerations provide a sufficient basis for compromising the liability; and (3) compromise of the liability would not undermine compliance by taxpayers with the tax laws. Sec. 301.7122-1(b)(3), Proced. & Admin. Regs.

---

[11] Petitioner alleged respondent erred by not finding there was doubt as to collectibility. However, petitioner did not present information to substantiate this claim and did not argue it on brief. This Court concludes petitioner has abandoned this argument.

A.    Economic Hardship

Petitioner asserts that Ms. Cochran abused her discretion by rejecting his offer-in-compromise because "There is no indication that SO Cochran gave any substantive consideration to petitioner's demonstrated special circumstances or that he would experience a hardship if required to make a full-payment."   In support of this assertion, petitioner argues Ms. Cochran:  (1) Failed to adequately consider his health issues; (2) failed to consider that because of current and future health issues petitioner will retire early, causing his income to decrease; (3) improperly valued petitioner's real property; and (4) failed to use actual housing and utility expenses to determine his total monthly living expenses.

Section 301.6343-1(b)(4)(i), Proced. & Admin. Regs., states that economic hardship occurs when a taxpayer is "unable to pay his or her reasonable basic living expenses."  Section 301.7122-1(c)(3), Proced. & Admin. Regs., sets forth factors to consider in evaluating whether collection of a tax liability would cause economic hardship, as well as some examples.  One example involves a taxpayer who provides full-time care to a dependent child with a serious long-term illness.  A second example involves a taxpayer who would lack adequate means to pay his basic living expenses if his only asset was liquidated.  The third example involves a disabled taxpayer who has a fixed income

and a modest home specially equipped to accommodate his disability, and who is unable to borrow against his home because of his disability. See sec. 301.7122-1(c)(3)(iii), Examples (1), (2), and (3), Proced. & Admin. Regs. None of these examples bears any resemblance to this case, but instead all "describe more dire circumstances". Speltz v. Commissioner, 454 F.3d 782, 786 (8th Cir. 2006), affg. 124 T.C. 165 (2005); see also Barnes v. Commissioner, T.C. Memo. 2006-150. Nevertheless, we will address petitioner's arguments.

### 1. Discussion of Special Circumstances in the Notice of Determination

Petitioner argues that Ms. Cochran failed "to follow proper procedure by [not] discussing Petitioner's special circumstances, what equity was considered in relation to his special circumstances, and how the special circumstances affected her determination of his ability to pay." Petitioner infers that, because the notice of determination did not discuss the special circumstances in detail, Ms. Cochran failed to adequately take petitioner's circumstances into consideration.

This Court does not believe that Appeals must specifically list in the notice of determination every single fact it considers in arriving at a determination. See Barnes v. Commissioner, supra. This is especially true in a case such as this, where petitioner provided Ms. Cochran with multiple letters and hundreds of pages of exhibits. Ms. Cochran considered all of

the arguments and information presented to her.  Given the amount of information, it would be unreasonable to require her to specifically address in the notice of determination every single asserted fact, circumstance, and argument presented.  The fact that all of the information presented was not specifically addressed in the notice of determination does not indicate an abuse of discretion.

### 2.   Petitioner's Medical Expenses and Possible Retirement

Petitioner argues Ms. Cochran failed to adequately consider his declining health, the likelihood his health problems will require early retirement, and possible future increases in medical expenses.

Included in the documentation provided to Ms. Cochran were letters from petitioner's doctors stating that he suffers from work-related injuries to his lumbar, cervical, and thoracic spine, his wrists, and his right elbow, resulting in multiple medical procedures, including pain management therapy. Petitioner asserted the severity of his injuries will force him to retire in the near future and presented a letter from his doctor indicating his injuries "may" lead to future disability.

In the notice of determination, Ms. Cochran stated:  "the taxpayer's representative contended that the taxpayer was being evaluated for possible disability".  However, no actual disability was documented, and no evidence was produced

indicating petitioner's present or future medical expenses will cause him to be unable to pay his basic living expenses. As to petitioner's asserted increasing expenses due to health problems, Ms. Cochran determined that "the taxpayer failed to document economic hardship" and the present offer "must be considered within the framework of present facts".

Petitioner reported monthly medical expenses of $1,747 on his Form 433-A, which Ms. Cochran accepted. Petitioner did not report or substantiate future amounts of increased medical expenses. Given the information presented to her, it was not arbitrary or capricious for Ms. Cochran to ignore speculative future medical costs when making her final determination. Therefore, this Court rejects petitioner's assertion that Ms. Cochran failed to consider his current and future medical costs.

Petitioner also asserts that Ms. Cochran abused her discretion by using a longer period (116 months) for evaluating income from future earnings when petitioner stated he would retire early because of health problems. Although petitioner stated he may retire, he did not state that he would retire by a certain date or that there was a mandatory retirement age.

Even when a 48-month period is used to determine future earnings, petitioner's income potential of $151,872 still exceeds

his offer of $102,000.[12]  Given the information presented, it was not arbitrary or capricious that Ms. Cochran was not persuaded by petitioner's statements of possible retirement when evaluating his income from future earnings.

### 3.    Petitioner's Property

Petitioner argues Ms. Cochran improperly increased the value of his house and his Arizona property.  On his Form 433-A, petitioner reported the estimated fair market value of his house was $460,000, with an 80-percent quick-sale value of $368,000 and an outstanding encumbrance of $369,000.  Petitioner's estimate was based on a professional appraisal dated May 8, 2003.  Ms. Cochran testified she did not accept petitioner's reported value because the appraisal was over a year old and no longer reflected current value.  Instead, she determined a value of $550,000, using recent comparable sales.[13]

---

[12] Ms. Cochran testified at trial that she originally erred by calculating income potential over 116 months and a 48-month factor was the correct figure to determine income potential because petitioner made a cash offer.

[13] Ms. Cochran testified at trial that she was not required to use a quick-sale value (80 percent of fair market value) for the real property because, as she determined, it could reasonably sell within 90 days.  The 90-day period was used because, pursuant to the Form 656, the cash offer had to be paid within 90 days from written notice of acceptance of the offer.

Ms. Cochran credited petitioner with a half interest in each property because his wife owned a half interest in each property.

On his Form 433-A, petitioner reported the estimated fair market value of his Arizona property at 1015 Fair Street Prescott, AZ 86305, as $87,000, with an 80-percent quick-sale value of $69,600 and an outstanding encumbrance of zero. Petitioner's estimate was based upon the Yavapai County, Arizona, Assessor's Office appraisal dated January 31, 2003. Ms. Cochran discovered petitioner had given her the Yavapai County Assessor's address, not the property's actual location. The Arizona property was at 2320 West Live Oak Drive, Prescott, AZ. Ms. Cochran did not accept petitioner's reported value. Instead, she determined the property's value at $150,000 using recent comparable sales.

Assuming petitioner's professional appraisal and assessor valuation should have been accepted, this Court would not find Ms. Cochran abused her discretion in rejecting petitioner's offer-in-compromise based on economic hardship. On his Form 433-A, petitioner reported assets with a total value of $232,436 and income potential of approximately $151,872. However, petitioner offered to pay only $102,000 to compromise his outstanding tax liabilities. This Court finds Ms. Cochran did not abuse her discretion by rejecting an offer-in-compromise that bore no relationship to petitioner's own calculations of his ability to pay.

#### 4. Petitioner's Other "Financial Circumstances"

Petitioner argues that pursuant to section 7122(c)(2), respondent was required to include actual housing and utility expenses when determining his total monthly living expenses, not the Internal Revenue Service standard allowances. Section 7122(c)(2) provides that the Secretary shall publish standard allowances for basic living expenses. The Commissioner may depart from standard allowances where "such use would result in the taxpayer not having adequate means to provide for basic living expenses." Sec. 7122(c)(2)(B).

Ms. Cochran determined petitioner's circumstances "[were] not sufficient to deviate from the local guideline amounts". Petitioner did not produce evidence indicating he would not have adequate means to provide for his basic living expenses. Ms. Cochran did not abuse her discretion by using standard allowances instead of petitioner's actual housing and utility expenses.

Petitioner also asserts Ms. Cochran abused her discretion by failing to inquire about changes in his financial circumstances after the offer-in-compromise had been submitted. The record does not indicate petitioner's financial situation had substantially changed from the date the offer was submitted on March 24, 2000, through the date of its denial on December 16, 2004. Ms. Cochran did not abuse her discretion.

5.   Encouraging Voluntary Compliance With the Tax Laws

Any decision by Ms. Cochran to accept petitioner's offer-in-compromise because of ETA based on economic hardship must be viewed against the backdrop of section 301.7122-1(b)(3)(iii), Proced. & Admin. Regs.[14]  See Barnes v. Commissioner, T.C. Memo. 2006-150.  This section requires Ms. Cochran to deny petitioner's offer if its acceptance would undermine voluntary compliance with tax laws by taxpayers in general.  Thus, even if this Court were to assume arguendo that petitioner would suffer economic hardship, a finding that it declines to make, this Court would not find that Ms. Cochran's rejection of petitioner's offer was an abuse of discretion.  As discussed below (in our discussion of petitioner's "equitable facts" argument), acceptance of petitioner's offer would undermine voluntary compliance with tax laws by taxpayers in general.

B.   Public Policy and Equity Considerations

Petitioner asserts that "There are so many unique and equitable facts in this case that this case is an exceptional circumstance" and respondent abused his discretion by not accepting those facts as grounds for an offer-in-compromise.  In support of his assertion, petitioner argues that:  (1) The longstanding nature of this case justifies acceptance of the

---

[14]  The prospect that acceptance of an offer will undermine compliance with the tax laws militates against its acceptance. See also Barnes v. Commissioner, T.C. Memo. 2006-150.

offer-in-compromise; (2) respondent's reliance on an example in the Internal Revenue Manual was improper; and (3) respondent failed to consider petitioner's other "equitable facts".

### 1. Longstanding Case

Petitioner asserts that the legislative history requires respondent to resolve "longstanding" cases by forgiving penalties and interest which would otherwise apply. Petitioner argues that, because this is a longstanding case, respondent abused his discretion by failing to accept his offer-in-compromise.

Petitioner's argument is essentially the same one considered and rejected by the Court of Appeals for the Ninth Circuit in Fargo v. Commissioner, 447 F.3d at 711-712. See also Keller v. Commissioner, T.C. Memo. 2006-166; Barnes v. Commissioner, supra. The Court rejects petitioner's argument for the same reasons stated by the Court of Appeals. The Court adds that petitioner's counsel participated in the appeal in Fargo as counsel for the amici. On brief, petitioner suggests that the Court of Appeals knowingly wrote its opinion in Fargo in such a way as to distinguish that case from the cases of counsel's similarly situated clients (e.g., petitioner), and to otherwise allow those clients' liabilities for penalties and interest to be forgiven. The Court does not read the opinion of the Court of Appeals in Fargo to support that conclusion. See Keller v. Commissioner, supra; Barnes v. Commissioner, supra.

Respondent's rejection of petitioner's longstanding case argument was not arbitrary or capricious.

2.   The Internal Revenue Manual Example

Petitioner argues that respondent erred when he determined that petitioner was not entitled to relief according to the second example in IRM section 5.8.11.2.2(3).  Petitioner asserts that many of the facts in this case were not present in the example and, therefore, any reliance on the example was misplaced.  Petitioner's argument is not persuasive.

IRM section 5.8.11.2.2(3) discusses ETA offers-in-compromise based on equity and public policy grounds and states in the second example:

> In 1983, the taxpayer invested in a nationally marketed partnership which promised the taxpayer tax benefits far exceeding the amount of the investment. Immediately upon investing, the taxpayer claimed investment tax credits that significantly reduced or eliminated the tax liabilities for the years 1981 through 1983.  In 1984, the IRS opened an audit of the partnership under the provisions of the Tax Equity and Fiscal Responsibility Act of 1982 (TEFRA).  After issuance of the Final Partnership Administrative Adjustment (FPAA), but prior to any proceedings in Tax Court, the IRS made a global settlement offer in which it offered to concede a substantial portion of the interest and penalties that could be expected to be assessed if the IRS's determinations were upheld by the court.  The taxpayer rejected the settlement offer. After several years of litigation, the partnership level proceeding eventually ended in Tax Court decisions upholding the vast majority of the deficiencies asserted in the FPAA on the grounds that the partnership's activities lacked economic substance. The taxpayer has now offered to compromise all the penalties and interest on terms more favorable than those contained in the prior settlement offer, arguing

that TEFRA is unfair and that the liabilities accrued
in large part due to the actions of the Tax Matters
Partner (TMP) during the audit and litigation. Neither
the operation of the TEFRA rules nor the TMP's actions
on behalf of the taxpayer provide grounds to compromise
under the equity provision of paragraph (b)(4)(i)(B) of
this section. Compromise on those grounds would
undermine the purpose of both the penalty and interest
provisions at issue and the consistent settlement
principles of TEFRA. * * *

1 Administration, Internal Revenue Manual (CCH), sec.

5.8.11.2.2(3), at 16,378. Ms. Cochran determined that

petitioner's case is similar to the example:

Some of the most obvious similarities--the year, pretty
old, and that seems to match or correlate to the
taxpayer's circumstances, that this was a TEFRA
proceeding, that an FPAA was issued, * * * They
rejected a settlement offer that had been previous--
that the IRS had previously made. The taxpayers
entered litigation for a number of years. And--and
that there were actions of the TMP that the taxpayer
was raising issues of tax-motivated--TMP's actions as
one of his arguments.

The Court agrees with respondent that the example presents

similar circumstances to those in petitioner's case. Ms.

Cochran's testimony accurately reflects those similarities.

Petitioner is correct in asserting that not all the facts in

his case are present in the example. However, it is unreasonable

to expect that facts in an example be identical to facts of a

particular case before the example can be relied upon. The

Internal Revenue Manual example was only one of many factors

respondent considered. Given the similarities to petitioner's

case, respondent's reliance on that example was not arbitrary or capricious.

### 3. Petitioner's Other "Equitable Facts"

Petitioner argues that respondent abused his discretion by failing to consider the other "equitable facts" of this case. Petitioner's "equitable facts" include reference to: (1) Petitioner's reliance on Bales v. Commissioner, T.C. Memo. 1989-568;[15] (2) petitioner's reliance on Hoyt's enrolled agent status; (3) Hoyt's criminal conviction; (4) Hoyt's fraud on petitioner; and (5) other letters and cases. The basic thrust of petitioner's argument is that he was defrauded by Hoyt and that, if he were held responsible for penalties and interest incurred as a result of his investment in a tax shelter, it would be inequitable and against public policy. Petitioner's argument is not persuasive.

---

[15] Bales v. Commissioner, T.C. Memo. 1989-568, involved deficiencies determined against various investors in several Hoyt partnerships. This Court found in favor of the investors on several issues, stating that "the transaction in issue should be respected for Federal income tax purposes." Taxpayers in many Hoyt-related cases have used Bales as the basis for a reasonable cause defense to accuracy-related penalties. This argument has been uniformly rejected by this Court and by the Courts of Appeals for the Sixth and Tenth Circuits. See, e.g., Mortensen v. Commissioner, 440 F.3d 375, 390-391 (6th Cir. 2006), affg. T.C. Memo. 2004-279; Van Scoten v. Commissioner, 439 F.3d 1243, 1254-1256 (10th Cir. 2006), affg. T.C. Memo. 2004-275; Sanders v. Commissioner, T.C. Memo. 2005-163; Hansen v. Commissioner, T.C. Memo. 2004-269.

While the regulations do not set forth a specific standard for evaluating an offer-in-compromise based on claims of public policy or equity, the regulations contain two examples. See sec. 301.7122-1(c)(3)(iv), Examples (1) and (2), Proced. & Admin. Regs. The first example describes a taxpayer who is seriously ill and unable to file income tax returns for several years. The second example describes a taxpayer who received erroneous advice from the Commissioner as to the tax effect of the taxpayer's actions. Neither example bears any resemblance to this case. Unlike the exceptional circumstances exemplified in the regulations, petitioner's situation is neither unique nor exceptional in that his situation mirrors those of numerous other taxpayers who claimed tax shelter deductions in the 1980s and 1990s. See Keller v. Commissioner, T.C. Memo. 2006-166; Barnes v. Commissioner, T.C. Memo. 2006-150.

Of course, the examples in the regulations are not meant to be exhaustive, and petitioner has a more sympathetic case than the taxpayers in Fargo v. Commissioner, 447 F.3d at 714, for whom the Court of Appeals for the Ninth Circuit noted that "no evidence was presented to suggest that Taxpayers were the subject of fraud or deception". Such considerations, however, have not kept this Court from finding investors in the Hoyt tax shelters to be liable for penalties and interest, nor have they prevented the Courts of Appeals for the Sixth and Tenth Circuits from

affirming our decisions to that effect.  See <u>Mortensen v. Commissioner</u>, 440 F.3d 375 (6th Cir. 2006), affg. T.C. Memo. 2004-279; <u>Van Scoten v. Commissioner</u>, 439 F.3d 1243 (10th Cir. 2006), affg. T.C. Memo. 2004-275.

Ms. Cochran testified that she considered all of petitioner's assertions, including the numerous letters and exhibits.  Nevertheless, Ms. Cochran determined that petitioner did not qualify for an offer-in-compromise.

The mere fact that petitioner's "equitable facts" did not persuade respondent to accept petitioner's offer-in-compromise does not mean that those assertions were not considered.  The notice of determination and Ms. Cochran's testimony demonstrate respondent's clear understanding and careful consideration of the facts and circumstances of petitioner's case.  The Court finds that respondent's determination that the "equitable facts" did not justify acceptance of petitioner's offer-in-compromise was not arbitrary or capricious and thus was not an abuse of discretion.

The Court finds that compromising petitioner's case on grounds of public policy or equity would not enhance voluntary compliance by other taxpayers.  A compromise on that basis would place the Government in the unenviable role of an insurer against poor business decisions by taxpayers, reducing the incentive for taxpayers to investigate thoroughly the consequences of

transactions into which they enter. It would be particularly inappropriate for the Government to play that role here, where the transaction at issue is participation in a tax shelter. Reducing the risks of participating in tax shelters would encourage more taxpayers to run those risks, thus undermining rather than enhancing compliance with the tax laws. See <u>Barnes v. Commissioner</u>, <u>supra</u>.

C. <u>Petitioner's Other Arguments</u>

1. <u>Compromise of Penalties and Interest in an ETA Offer-in-Compromise</u>

Petitioner advances a number of arguments focusing on his assertion that respondent determined that penalties and interest could not be compromised in an ETA offer-in-compromise. Petitioner argues that such a determination is contrary to legislative history and is therefore an abuse of discretion. These arguments are not persuasive.

The regulations under section 7122 provide that "If the Secretary determines that there are grounds for compromise under this section, the Secretary may, at the Secretary's discretion, compromise any civil * * * liability arising under the internal revenue laws". Sec. 301.7122-1(a)(1), Proced. & Admin. Regs. In other words, the Secretary may compromise a taxpayer's tax liability if he determines that grounds for a compromise exist. If the Secretary determines that grounds do not exist, the amount

offered (or the way in which the offer is calculated) need not be considered.

Petitioner's arguments regarding the compromise of penalties and interest do not relate to whether there are grounds for a compromise. Instead, these arguments go to whether the amount petitioner offered to compromise his tax liability was acceptable. As addressed above, respondent's determination that the facts and circumstances of petitioner's case did not warrant acceptance of his offer-in-compromise was not arbitrary or capricious and was thus not an abuse of discretion. Because no grounds for compromise exist, this Court need not address whether respondent can or should compromise penalties and interest in an ETA offer-in-compromise. See Keller v. Commissioner, supra.

2. Information Sufficient for the Court to Review Respondent's Determination

Petitioner argues that respondent failed to provide the Court with sufficient information "so that this Court can conduct a thorough, probing, and in-depth review of respondent's determinations." Petitioner's argument is without merit.

Generally, a taxpayer bears the burden of proving the Commissioner's determinations incorrect. Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).[16] The burden was on

---

[16] While sec. 7491 shifts the burden of proof and/or the burden of production to the Commissioner in certain circumstances, this section is not applicable in this case

(continued...)

petitioner to show that respondent abused his discretion.  The burden was not on respondent to provide enough information to show that he did not abuse his discretion.  Nevertheless, this Court finds that it had more than sufficient information to review respondent's determination.

### 3. Scheduling of the Section 6330 Hearing and Deadline for Submission of Documents

Petitioner argues that Ms. Cochran abused her discretion by not allowing his counsel additional time to prepare for the section 6330 hearing and to submit additional documentation.  Once the section 6330 hearing was scheduled, Ms. Cochran refused petitioner's request to delay the hearing.  However, Ms. Cochran did extend the deadline for submission of documents.

While petitioner wanted to delay the section 6330 hearing, he does not allege that he was unable to adequately prepare for the hearing.  Additionally, petitioner has not identified any documents or other information that he believes Ms. Cochran should have considered but that he was unable to produce because of the deadline for submission.  Given the thoroughness and the amount of information submitted, it is unclear why petitioner needed additional time.  This Court does not believe that Ms.

---

[16](...continued) because respondent's examination of petitioner's returns did not commence after July 22, 1998.  See Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3001(c), 112 Stat. 727.

Cochran abused her discretion by establishing a timeframe for the section 6330 hearing and the submission of documents.

### 4. Efficient Collection Versus Intrusiveness

Petitioner argues that respondent failed to balance the need for efficient collection of taxes with the legitimate concern that the collection action be no more intrusive than necessary. See sec. 6330(c)(3)(C). Petitioner's argument is not supported by the record.

Petitioner has an outstanding tax liability. In his section 6330 hearing, petitioner proposed only an offer-in-compromise. Because no other collection alternatives were proposed, there were no less intrusive means for respondent to consider. The Court finds that respondent balanced the need for efficient collection of taxes with petitioner's legitimate concern that collection be no more intrusive than necessary.

In reaching these holdings, the Court has considered all arguments made and, to the extent not mentioned, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be

entered for respondent.