T.C. Memo. 2015-159

UNITED STATES TAX COURT

LYNN EDWARD YORK AND CYNTHIA LEE YORK, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 529-14L.                    Filed August 13, 2015.

Lynn Edward York and Cynthia Lee York, pro sese.

<u>Harry J. Negro</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

KERRIGAN, <u>Judge</u>: The petition in this case was filed in response to a

Notice of Determination Concerning Collection Action(s) under Section 6320

and/or 6330 (notice of determination) for tax years 2003, 2008, 2009, 2010, and

2011 (years at issue). We must consider whether respondent's determination to

[*2] proceed with collection actions regarding unpaid tax liabilities for the tax years at issue was proper.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times. We round all monetary amounts to the nearest dollar.

FINDINGS OF FACT

Some of the facts are stipulated and are so found. Petitioners resided in Pennsylvania when the petition was filed. Petitioners are truck drivers and are on the road frequently.

Petitioners filed Federal income tax returns for the tax years at issue, but they did not pay the full amount of their self-reported income tax liability for each tax year.

On March 26, 2013, respondent sent petitioners a Letter 3172, Notice of Federal Tax Lien Filing and Your Right to a Hearing Under Section 6320 (NFTL), for the tax years at issue. As of the date of the NFTL, petitioners owed the following:

| Year | Unpaid balance |
|------|----------------|
| 2003 | $2,484 |
| 2008 | 2,537 |

[*3]

| 2009 | 4,958 |
| 2010 | 9,057 |
| 2011 | 8,319 |

The total balance was $27,355.

Petitioners timely filed a Form 12153, Request for a Collection Due Process or Equivalent Hearing, regarding the NFTL. On May 20, 2013, separate from the Form 12153, petitioners filed a request for an offer-in-compromise (OIC) for tax year 2002 and the tax years at issue. This request included: a Form 656, Offer in Compromise; a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals; bank information; and an explanation of petitioners' financial status. Petitioners' proposed OIC was a lump-sum payment of $15,000. Petitioners indicated that the reason for their OIC was exceptional circumstances and effective tax administration. The settlement officer mailed a letter to petitioners scheduling a telephone collection due process (CDP) hearing for June 25, 2013. The conference call was held, and petitioners' request for an OIC was discussed. The settlement officer informed petitioners that their OIC was being considered.

After the CDP hearing respondent reassigned petitioners' case to a different settlement officer. On September 20, 2013, the new settlement officer sent a letter

[*4] scheduling a CDP hearing for October 30, 2013. This letter requested the following information: substantiation of health insurance premiums; substantiation of out-of-pocket healthcare costs; substantiation of a payment agreement with the State for delinquent taxes; substantiation of all secured debts; and a copy of petitioners' 2012 Form 1040, U.S. Individual Income Tax Return, with all schedules. Petitioners did not participate in the conference call, nor did they submit the requested information. On October 30, 2013, the settlement officer mailed petitioners an additional letter stating that she had not heard from them and reiterating that the requested information should be submitted within 14 days.

The settlement officer calculated petitioners' monthly income and expenses using the information that petitioners provided with their offer-in-compromise. The settlement officer determined that petitioners had net monthly income of $1,057 and that they had received death benefits of approximately $30,000 and $67,000 during 2013.

On November 4, 2013, petitioners left a phone message for the settlement officer explaining that they did not participate in the hearing on October 30, 2013, because they were on the road for work. The settlement officer returned their call, but was unable to reach them and left a message. Since the settlement officer had

[*5] not heard from petitioners, she called and left another message on November 13, 2013.

On December 2, 2013, respondent issued petitioners a notice of determination sustaining the NFTL. In the notice of determination the settlement officer stated that she had verified that all requirements of applicable law and administrative procedure had been met. On January 8, 2014, petitioners filed a petition expressing concern about the OIC's being rejected.

OPINION

Where the validity of the underlying tax liability is properly at issue, we review the determination de novo. Sego v. Commissioner, 114 T.C. 604, 610 (2000). Petitioners did not raise their underlying tax liabilities. The Court reviews administrative determinations by the Commissioner's Appeals Office regarding nonliability issues for abuse of discretion. Hoyle v. Commissioner, 131 T.C. 197, 200 (2009). We consider whether the determination was arbitrary, capricious, or without sound basis in fact or law. See, e.g., Murphy v. Commissioner, 125 T.C. 301, 320 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006); Woodral v. Commissioner, 112 T.C. 19, 23 (1999). The Court does not conduct an independent review and substitute its judgment for that of the settlement officer. Murphy v. Commissioner, 125 T.C. at 320. If the settlement officer

**[\*6]** follows all statutory and administrative guidelines and provides a reasoned, balanced decision, the Court will not reweigh the equities. Link v. Commissioner, T.C. Memo. 2013-53, at \*12.

Following a CDP hearing the settlement officer must determine whether to sustain the filing of the NFTL. In making that determination, the settlement officer is required by section 6330(c)(3) to consider: (1) whether the requirements of any applicable law or administrative procedure have been met; (2) any issues appropriately raised by the taxpayer; and (3) whether the proposed collection action balances the need for the efficient collection of taxes and the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. Lunsford v. Commissioner, 117 T.C. 183, 184 (2001); Diamond v. Commissioner, T.C. Memo. 2012-90, slip op. at 6-7; see also sec. 6320(c).

Section 6323(j)(1) provides:

> (1) In general.--The Secretary may withdraw a notice of a lien filed under this section and this chapter shall be applied as if the withdrawn notice had not been filed, if the Secretary determines that--

> (A) the filing of such notice was premature or otherwise not in accordance with administrative procedures of the Secretary,

> (B) the taxpayer has entered into an agreement under section 6159 to satisfy the tax liability for which the lien was

**[\*7]**   imposed by means of installment payments, unless such agreement provides otherwise,

(C) the withdrawal of such notice will facilitate the collection of the tax liability, or

(D) with the consent of the taxpayer or the National Taxpayer Advocate, the withdrawal of such notice would be in the best interests of the taxpayer (as determined by the National Taxpayer Advocate) and the United States.

Petitioners contend that they did not realize the September 20, 2013, letter was setting up a call for a CDP hearing. The letter explains clearly the purpose of the call and requests information from petitioners. A settlement officer has the discretion to decide when to end the administrative CDP proceedings where requested information and/or completed forms are not provided to her. See sec. 301.6330-1(e)(3), Q&A-E9, Proced. & Admin. Regs. It was not an abuse of discretion for the settlement officer to recommend the notice of determination be sustained as a result of petitioners' failure to provide the requested information in a reasonable time. See Murphy v. Commissioner, 125 T.C. 301.

A taxpayer may offer to compromise a Federal tax debt as a collection alternative to a proposed levy. Secs. 6320(b)(4), 6330(c)(2)(A)(iii). Section 7122(c) authorizes the Commissioner to prescribe guidelines to determine whether an offer-in-compromise should be accepted. The Commissioner may accept an

**[*8]** offer-in-compromise on one of three grounds:  doubt as to liability, doubt as to collectibility, and promotion of effective tax administration.  Sec. 301.7122-1(b)(1), (2), and (3), Proced. & Admin. Regs.; see Smith v. Commissioner, T.C. Memo. 2007-73, slip op. at 14, aff'd in part sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009).

Petitioners contend that they want to have an offer-in-compromise accepted and the lien removed on the ground of promotion of effective tax administration.

The Secretary may compromise a liability on the ground of effective tax administration when:  (1) collection of the full liability will create economic hardship or (2) exceptional circumstances exist such that the collection of the full liability would undermine public confidence that the tax laws are fairly and equitably administered.  Speltz v. Commissioner, 124 T.C. 165, 172-174 (2005), aff'd, 454 F.3d 782 (8th Cir. 2006); sec. 301.7122-1(b)(3), Proced. & Admin. Regs.

1.    Economic Hardship

Factors supporting (but not conclusive of) a determination that collection would cause economic hardship include, but are not limited to:

(A) Taxpayer is incapable of earning a living because of a long term illness, medical condition, or disability, and it is reasonably

[*9]  foreseeable that taxpayer's financial resources will be exhausted providing for care and support during the course of the condition;

(B) Although taxpayer has certain monthly income, that income is exhausted each month in providing for the care of dependents with no other means of support; and

(C) Although taxpayer has certain assets, the taxpayer is unable to borrow against the equity in those assets and liquidation of those assets to pay outstanding tax liabilities would render the taxpayer unable to meet basic living expenses.

Sec. 301.7122-1(c)(3)(i), Proced. & Admin. Regs.

Petitioners testified that they had gone through much emotional and financial turmoil over the past several years. They wanted an OIC accepted so that they could have a fresh start. However, they do not contend that either had a long-term illness, medical condition, or disability. Nor do they claim that they exhaust their monthly income providing for the care of dependents with no other means of support. They do not claim that borrowing against the equity in their real property interests would render them unable to meet basic living expenses. Accordingly, they have not shown that the collection of the full liability would cause economic hardship. Therefore, petitioners do not qualify for an OIC on this ground.

2.    Compelling Public Policy or Equity Considerations

The Secretary may enter into a compromise to promote effective tax administration where compelling public policy or equity considerations identified

**[*10]** by the taxpayer provide a sufficient basis for compromising the liability.  Id. para. (b)(3)(ii).  A compromise will be justified only where, because of exceptional circumstances, collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner.  A taxpayer proposing a compromise on the basis of effective tax administration will be expected to demonstrate circumstances that justify a compromise even though a similarly situated taxpayer may have paid his liability in full.  Id.  Examples of cases where a compromise is allowed for purposes of public policy and equity include:  (1) a taxpayer who was hospitalized regularly for a number of years and was unable to manage his financial affairs incurs significant tax liabilities, penalties, and interest and (2) a taxpayer learns at audit that he received erroneous advice from the Internal Revenue Service and, as a result, is facing additional taxes, penalties, and additions to tax.  Speltz v. Commissioner, 124 T.C. at 173; sec. 301.7122-1(c)(3)(C)(iv), Proced. & Admin. Regs.

Petitioners have identified no public policy or equity considerations that would justify a compromise on the basis of effective tax administration.  Accordingly, they do not qualify for an OIC on this ground.

Any contentions we have not addressed are irrelevant, moot, or meritless.

[*11] To reflect the foregoing,

<u>Decision will be entered</u>

<u>for respondent.</u>