T.C. Memo. 2010-250

UNITED STATES TAX COURT

DAVID WEST, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 2674-06L.                    Filed November 16, 2010.

David West, pro se.

<u>Andrea D. Haddad</u>, for respondent.

MEMORANDUM OPINION

GALE, <u>Judge</u>:  Pursuant to section 6330(d)(1),[1] petitioner

seeks review of respondent's determination to maintain a lien

with respect to petitioner's unpaid income tax for 1999.  Pending

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code of 1986, as in effect for the relevant periods, and all Rule references are to the Tax Court Rules of Practice and Procedure.

before us are respondent's motion for summary judgment (motion) and petitioner's motion for summary judgment[2] (cross-motion) under Rule 121. For the reasons set forth below, we shall grant respondent's motion and deny petitioner's cross-motion.

## Background[3]

At the time of filing the petition, petitioner resided in New Hampshire.

Petitioner did not timely file an income tax return for taxable year 1999. On April 16, 2003, respondent mailed petitioner a statutory notice of deficiency for 1999, which petitioner received. In response to the notice, on June 16, 2003, petitioner submitted a Form 1040, U.S. Individual Income Tax Return, for 1999 in which he reported tax liability of $90,519.56 and a balance due of $81,625.32. Petitioner did not pay the balance reported as due. On August 25, 2003, respondent assessed the $90,519.56 tax liability petitioner reported as due, as well as additions to tax for failure to pay estimated tax of

---

[2]Petitioner's cross-motion does not specifically seek removal of the lien. Instead, petitioner requests that his previously rejected offer-in-compromise be accepted. Since acceptance of petitioner's offer-in-compromise would eliminate the liability giving rise to the lien, we treat his motion as seeking elimination of the lien that is at issue in this case.

[3]The following findings are established in the administrative record or through party admissions and/or are undisputed.

$4,347,42, for failure to timely file of $18,365.70, and for failure to timely pay of $16,733.19.

On February 10, 2004, respondent issued to petitioner a Final Notice, Notice of Intent to Levy and Notice of Your Right to a Hearing under IRC 6330, with respect to the assessed tax liability for 1999.  Petitioner untimely submitted a Form 12153, Request for a Collection Due Process Hearing, over a year later (dated February 22, 2005) and was given an equivalent hearing.[4]

In early April 2004[5] petitioner submitted a Form 656, Offer in Compromise, whereby he sought to compromise his 1999 liability for $8,974.02 on the basis of effective tax administration and doubt as to liability (OIC).  Attached to the Form 656 was a seven-page explanation of petitioner's position (Form 656 attachment).  On the first page of the Form 656 attachment petitioner explained that he was claiming both an effective tax administration basis and a doubt as to liability basis for his OIC.  He further explained that the doubt as to liability basis related solely to the estimated tax addition for 1999, which petitioner believed had been miscalculated because the addition,

---

[4]Petitioner sought review of the 2004 levy in the petition in this case.  Those portions of the petition seeking review of the levy were dismissed for lack of jurisdiction.

[5]Petitioner dated the document Apr. 2, 2004, and respondent stamped it received on Apr. 7, 2004.

he contended, was due entirely to sales of stock that occurred during the last week of 1999.

Petitioner explained his effective tax administration ground in the remaining six pages of the Form 656 attachment. Therein, petitioner contended that effective tax administration dictated acceptance of his OIC because his 1999 tax liability was principally due to large capital gains arising from the sale of stock during the last week of 1999 that were largely offset by large capital losses incurred from stock sales during 2000. The Form 656 attachment stated that petitioner calculated his $8,974.02 OIC by computing the 1999 tax he would owe if his capital losses (and certain interest expense) after 1999 were allowed to offset his capital gains for 1999 and he were given a credit for $3,962.35 of alternative minimum tax as a result of the exercise in an earlier year of incentive stock options to acquire the stock sold at a gain in 1999. The Form 656 attachment also cited as an argument for acceptance of petitioner's OIC an incident in 1987 where petitioner's inability to understand section 422 had caused him to forfeit an opportunity to exercise certain very valuable incentive stock options. Finally, the Form 656 attachment cited petitioner's difficulty in finding employment and the fact that the unresolved 1999 tax liability would likely preclude his borrowing against

the equity in his house to pay off certain unsecured debt, necessitating a sale of the house.

On June 2, 2004, one of respondent's offer examiners rejected petitioner's OIC. On June 30, 2004, petitioner appealed the rejection to respondent's Office of Appeals. An Appeals officer (2004 Appeals officer) reviewed petitioner's OIC and sustained the offer examiner's rejection (2004 administrative proceeding), advising petitioner in a November 12, 2004, letter that his OIC had been rejected because an amount larger than his offer appeared collectible and that "We have not found that an exceptional circumstance exists that allows our acceptance of your offer."

On January 20, 2005, respondent issued to petitioner a Notice of Federal Tax Lien Filing and Your Right to a Hearing Under IRC 6320 with respect to his 1999 tax liability.[6] Petitioner timely submitted a Form 12153 dated February 22, 2005.[7] In the correspondence between petitioner and the Appeals employee assigned to his hearing request (CDP hearing officer) petitioner requested that his OIC previously rejected by the Appeals Office be reconsidered, and the CDP hearing officer

---

[6]A notice of lien had been filed with respect to petitioner's residence in Hampton Falls, N.H.

[7]The Form 12153 requested a hearing with respect to both the Jan. 20, 2005, notice of Federal tax lien filing and the Feb. 10, 2004, notice of intent to levy. See text supra at note 4.

refused.  The Appeals Office subsequently issued a Notice of Determination Concerning Collection Action(s) Under Section 6320 and/or 6330 (notice of determination) on December 30, 2005, determining that the lien should be sustained.  Petitioner timely petitioned the Court in response to the notice of determination, and the parties subsequently filed motions for summary judgment.

### Discussion

"Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials."  Fla. Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988).  Summary judgment may be granted if the "pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law."  Rule 121(a) and (b).  Factual inferences are viewed in a light most favorable to the nonmoving party, and the moving party bears the burden of proving that there is no genuine issue of material fact.  Craig v. Commissioner, 119 T.C. 252, 260 (2002); Dahlstrom v. Commissioner, 85 T.C. 812, 821 (1985); Jacklin v. Commissioner, 79 T.C. 340, 344 (1982).

Section 6321 imposes a lien in favor of the United States on all property and rights to property of a person liable for taxes (taxpayer) when a demand for the taxes has been made and the

taxpayer fails to pay. The lien arises when an assessment is made. Sec. 6322. Generally, in order for the lien to be valid against third parties, the Secretary must file a notice of lien with certain State or local authorities where the taxpayer's property is situated. Sec. 6323(a), (f); Lindsay v. Commissioner, T.C. Memo. 2001-285, affd. 56 Fed. Appx. 800 (9th Cir. 2003).

Section 6320 provides that the Secretary shall furnish the taxpayer with written notice of the filing of a notice of lien and of the taxpayer's right to a hearing concerning the lien. Sec. 6320(a)(1), (3). If the taxpayer timely requests a hearing, the hearing is to be conducted by an officer or employee of the Commissioner's Office of Appeals who has had no prior involvement with respect to the unpaid taxes. Sec. 6320(b)(1), (3), (c).

The taxpayer may raise at the hearing "any relevant issue" relating to the unpaid tax or the proposed lien, including offers of collection alternatives such as an offer-in-compromise. Secs. 6320(c), 6330(c)(2)(A). The taxpayer may also raise challenges to the existence or amount of the underlying tax liability if he did not receive any statutory notice of deficiency with respect to such liability or otherwise have an opportunity to dispute it. Sec. 6330(c)(2)(B). However, pursuant to section 6330(c)(4), an issue may not be raised at the hearing if the issue was raised and considered in a previous administrative or judicial

proceeding in which the taxpayer meaningfully participated. "Section 6330(c)(4) expressly provides that taxpayers, at collection hearings before respondent's Appeals Office, may not raise issues that were previously raised by taxpayers and considered in any other administrative or judicial proceeding in which the taxpayers meaningfully participated." Magana v. Commissioner, 118 T.C. 488, 492 (2002); sec. 301.6320-1(e)(1), Proced. & Admin. Regs.; see also McIntosh v. Commissioner, T.C. Memo. 2003-279; Wooten v. Commissioner, T.C. Memo. 2003-113.

At the conclusion of the hearing, the Appeals employee must determine whether and how to proceed with collection, taking into account, inter alia, the issues properly raised by the taxpayer. Sec. 6330(c)(3).

We have jurisdiction to review the Appeals Office's determinations. Sec. 6330(d). Determinations with respect to the underlying tax liability are reviewed de novo, whereas determinations concerning collection matters are reviewed for abuse of discretion. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner, 114 T.C. 176, 181-182 (2000).

In his motion, respondent asserts that the sole issue petitioner raised during the hearing requested pursuant to section 6320(a)(3)(B) and (b) (CDP hearing) was whether the prior rejection of petitioner's OIC by respondent's Appeals Office in the 2004 administrative proceeding was proper. Petitioner does

not dispute that assertion in his response to respondent's motion. He asserts instead merely that "appropriate consideration" was not given to his OIC in the 2004 administrative proceeding. We therefore conclude that the only issue petitioner raised at his CDP hearing that remains before us is the rejection of his OIC as a collection alternative to the lien.[8]

In his submissions, petitioner argues that the CDP hearing officer erred in refusing to consider his OIC, claims that the OIC had not received appropriate consideration in the 2004 administrative proceeding, and advances arguments in support of the merits of his OIC. Respondent contends that petitioner's OIC

---

[8]As noted, petitioner's OIC as originally submitted to the offer examiner and reviewed by the Appeals Office included a claim that there was doubt as to liability with respect to the estimated tax addition for 1999. Given this doubt as to liability claim in the OIC, petitioner's attempt to renew consideration of the OIC at his CDP hearing could be construed as a challenge to a portion of the underlying tax liability for 1999. However, petitioner was precluded from challenging the underlying tax liability at his CDP hearing pursuant to sec. 6330(c)(2)(B), which precludes such a challenge where the person subject to collection action has had "an opportunity to dispute such tax liability." Sec. 6330(c)(2)(B). The offer of a hearing pursuant to sec. 6330, which petitioner received in connection with the notice of intent to levy mailed to him on Feb. 10, 2004, constituted "an opportunity to dispute" his underlying tax liability for 1999 within the meaning of sec. 6330(c)(2)(B). See Bell v. Commissioner, 126 T.C. 356, 358 (2006); McCollin v. Commissioner, T.C. Memo. 2010-93; Nelson v. Commissioner, T.C. Memo. 2009-108; Miller v. Commissioner, T.C. Memo. 2007-35. He was therefore precluded pursuant to sec. 6330(c)(2)(B) from disputing the underlying tax liability for 1999 at his CDP hearing held with respect to the notice of Federal tax lien filing.

had been previously considered and rejected by the Appeals Office in the 2004 administrative proceeding and, consequently, pursuant to section 6330(c)(4) could not be raised at the CDP hearing.

Section 6330(c)(4), as applicable to petitioner's hearing request,[9] provided[10] as follows:

> SEC. 6330(c). Matters Considered at Hearing.--In the case of any hearing conducted under this section--
>
> *    *    *    *    *    *    *
>
> (4) Certain issues precluded.--An issue may not be raised at the hearing if--
>
> > (A) the issue was raised and considered at a previous hearing under section 6320 or in any other previous administrative or judicial proceeding; and
> >
> > (B) the person seeking to raise the issue participated meaningfully in such hearing or proceeding.

Consequently, the propriety of the CDP hearing officer's refusal to consider the OIC depends upon whether the OIC was "raised and considered at a * * * previous administrative * * * proceeding" and whether petitioner "participated meaningfully" in the previous proceeding.

---

[9]Sec. 6330(c)(4) applies to hearings concerning liens held pursuant to sec. 6320. Sec. 6320(c).

[10]Sec. 6330(c)(4) was amended in the Tax Relief and Health Care Act of 2006, Pub. L. 109-432, div. A, sec. 407(b)(2), 120 Stat. 2961, so that subpars. (A) and (B) were redesignated cls. (i) and (ii) of subpar. (A).

There can be no dispute that petitioner's OIC was "raised" in the 2004 administrative proceeding. It was the sole subject of the 2004 administrative proceeding; the 2004 Appeals officer reviewed the offer examiner's rejection of the OIC and sustained it. Nor can it be disputed that the OIC for which petitioner contended in his CDP hearing was the same collection alternative considered in the 2004 administrative proceeding. Petitioner attached to his CDP hearing request the same six pages of the Form 656 attachment, containing the explanation of his offer based on effective tax administration, that he had attached to the Form 656 he submitted in the 2004 administrative proceeding.[11] Finally, the 2004 administrative proceeding was indisputably an "administrative * * * proceeding" within the meaning of section 6330(c)(4); the 2004 Appeals officer's review

---

[11]Respondent contends that the Form 656 and the Form 656 attachment are not part of the administrative record in this case because the CDP hearing officer did not review the documents. We disagree. Even assuming the Form 656 and the Form 656 attachment were not reviewed by the CDP hearing officer, they were nonetheless a part of petitioner's administrative file and were therefore available for her review. Moreover, petitioner submitted six of the seven pages of the Form 656 attachment (labeled as such, covering petitioner's explanation of the effective tax administration grounds for his OIC) as an attachment to his Form 12153. The CDP hearing officer undisputably reviewed the Form 12153 and its attachment. Consequently, the Form 656 and the Form 656 attachment are part of the administrative record. See Thompson v. U.S. Dept. of Labor, 885 F.2d 551, 553-556 (9th Cir. 1989). The same is true concerning the 2004 Appeals officer's Nov. 12, 2004, letter, cited in our findings.

of the rejection of petitioner's OIC was performed in accordance with section 7122(d).[12]

Whether petitioner's OIC was "considered" in the 2004 administrative proceeding requires a closer look for purposes of summary judgment. Petitioner contends in his objection to respondent's motion that his OIC did not receive "appropriate" consideration, that the offer examiner rejected it solely on the basis of ability to pay, and that the 2004 Appeals officer who reviewed the rejection and sustained it "shortshrifted me and refused to make an appropriate effort to learn about my situation."

In connection with petitioner's CDP hearing, the CDP hearing officer took the position that further consideration of petitioner's OIC was foreclosed by virtue of the 2004 administrative proceeding. Implicit in this position was the CDP hearing officer's conclusion that petitioner's OIC had been "considered" in the 2004 administrative proceeding for purposes of section 6330(c)(4). The basis for the CDP hearing officer's conclusion is reflected in her notes, recorded in the Appeals case activity records for the CDP hearing, which state that she reviewed the entries in the Appeals case activity records and the Appeals case memo (2004 Appeals case memo) prepared by the 2004

---

[12]Sec. 7122(d) was redesignated sec. 7122(e) in the Tax Increase Prevention and Reconciliation Act of 2005, Pub. L. 109-222, sec. 509(a), 120 Stat. 362 (2006).

Appeals officer. The CDP hearing officer's notes contain a level of detail with respect of the content of the 2004 Appeals case memo--the nature of petitioner's OIC, the name of the 2004 Appeals officer, and the Internal Revenue Manual (IRM) provision upon which the rejection was based, IRM pt. 5.8.11.2.2(3) (May 15, 2004)--which persuades us that there is no genuine issue of material fact concerning whether the CDP hearing officer reviewed the record of the 2004 administrative proceeding in reaching the conclusion that petitioner's OIC had been "considered" in that proceeding. Moreover, the CDP hearing officer had before her petitioner's written description of the OIC that he had submitted in the 2004 administrative proceeding. Thus, the CDP hearing officer could compare petitioner's submitted grounds for the OIC with the 2004 Appeals case memo in reaching her determination that the OIC had been "considered" in the 2004 administrative proceeding. Our own examination of the Form 656 attachment and of the 2004 Appeals case memo analyzing it persuades us that the CDP hearing officer's determination that petitioner's OIC had been "considered" in the 2004 administrative proceeding was proper.

Petitioner contends that the 2004 Appeals officer's consideration of his OIC in the 2004 administrative proceeding was inadequate--that the 2004 Appeals officer did not make the "appropriate effort" to understand his situation and, in essence,

did not grasp his arguments based on effective tax administration. However, as discussed below, a comparison of two documents in the administrative record--the Form 656 attachment and the 2004 Appeals case memo--is sufficient to convince us that there is no genuine issue of material fact and that respondent is entitled to a decision in his favor as a matter of law on the issue of whether petitioner's OIC was "considered" in a previous administrative proceeding within the meaning of section 6330(c)(4).

In the Form 656 attachment, petitioner explained that his grounds for seeking an offer-in-compromise based on effective tax administration were the lack of "proportionality" in his tax liability arising from the fact that he had realized large capital gains in 1999 as a result of sales of stock of a high technology company that occurred during the last week of that year, while in 2000 he had incurred large capital losses as a result of stock sales of companies in the same sector. But for the fact that his capital gains and losses straddled taxable years, petitioner contended, he would have been able to offset the gains with the losses, with the result that his 1999 capital gains would not have resulted in any significant income tax liability. Petitioner further suggested that the unfairness of his circumstances was exacerbated by the fact that the settlement dates for many of the late-1999 stock sales occurred in 2000. As

an additional circumstance of unfairness, petitioner cited the fact that the stock he sold at a gain in 1999 had been acquired through the exercise of incentive stock options in an earlier unspecified year and that he had incurred and paid alternative minimum tax (AMT) of $3,962.35 as a result of the exercise of the incentive stock options. In petitioner's view, the fact that he also incurred a capital gains tax liability under the regular tax upon the sale of the stock in 1999 constituted double taxation.

The Form 656 attachment further stated that petitioner had calculated his $8,974.02 offer by computing the 1999 income tax he would owe if his 2000 capital losses (and certain interest expense incurred after 1999) were allowed to offset his capital gains for 1999 and he were given a credit against the 1999 liability for the $3,962.35 in AMT paid when he acquired the stock pursuant to incentive stock options. In addition, the Form 656 attachment cited as an argument for acceptance of petitioner's OIC his contention that he had been "burned" in 1987 by the operation of section 422 when he sought to exercise incentive stock options upon his departure from a company at that time. In petitioner's view, the complexities of section 422, which he could not understand, had resulted in the company's refusal to allow him to exercise the most valuable of the options he held, and in his circumstances he was unable to effectively contend otherwise.

The Form 656 attachment also discussed petitioner's compliance history, maintaining that there were mitigating circumstances for his failure to timely file for 1999 and that his failure to timely file for 2000 through 2002 was excusable because he had overpaid his taxes for those years. Finally, the Form 656 attachment cited petitioner's precarious financial condition arising from his difficulty in finding employment and the fact that the unresolved 1999 tax liability would probably preclude his borrowing against the equity in his house to pay off certain unspecified unsecured debt, necessitating a sale of the house.

In the Internal Revenue Service Restructuring and Reform Act of 1998, Pub. L. 105-206, sec. 3462(a), 112 Stat. 764, Congress added section 7122(c), directing the Secretary to "prescribe guidelines for officers and employees of the Internal Revenue Service to determine whether an offer-in-compromise is adequate and should be accepted to resolve a dispute." The legislative history indicates that Congress intended that the guidelines provide for compromises of income tax liabilities on the basis of factors other than doubt as to liability or collectibility, such as compromises to "promote effective tax administration." H. Conf. Rept. 105-599, at 289 (1998), 1998-3 C.B. 747, 1043.

Regulations adopted pursuant to section 7122 set forth guidelines for evaluating offers-in-compromise to promote

effective tax administration (ETA offers). Under section 301.7122-1(b)(3)(i), Proced. & Admin. Regs., ETA offers may be accepted where collection in full could be achieved but would cause economic hardship, or, under section 301.7122-1(b)(3)(ii), Proced. & Admin. Regs., even where collection in full could be achieved without economic hardship:

> the IRS may compromise to promote effective tax administration where compelling public policy or equity considerations identified by the taxpayer provide a sufficient basis for compromising the liability. Compromise will be justified only where, due to exceptional circumstances, collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner. A taxpayer proposing compromise under this paragraph (b)(3)(ii) will be expected to demonstrate circumstances that justify compromise even though a similarly situated taxpayer may have paid his liability in full.

The regulations cite as examples of appropriate circumstances for accepting a "non-hardship" ETA offer a taxpayer whose medical condition rendered him unable to manage any of his financial affairs for many years who seeks to compromise his liability when the medical disability ends, or a taxpayer who incurs a tax liability as a result of erroneous advice received from the IRS. Sec. 301.7122-1(c)(3)(iv), Proced. & Admin. Regs. Even in the foregoing circumstances, the regulations provide that acceptance of a compromise is within the Secretary's discretion. Id.

Additional detailed instructions concerning acceptance of

nonhardship ETA offers are contained in the IRM.[13]

> 5.8.11.2.2 (05-15-2004)
> Public Policy or Equity Grounds
>
> 1.  Where there is no Doubt as to Liability (DATL), no
> Doubt as to Collectibility (DATC), and the
> liability could be collected in full without
> causing economic hardship, the Service may
> compromise to promote Effective Tax Administration
> (ETA) where compelling public policy or equity
> considerations identified by the taxpayer provide
> a sufficient basis for accepting less than full
> payment.  Compromise is authorized on this basis
> only where, due to exceptional circumstances,
> collection in full would undermine public
> confidence that the tax laws are being
> administered in a fair and equitable manner.
> Because the Service assumes that Congress imposes
> tax liabilities only where it determines it is
> fair to do so, compromise on these grounds will be
> rare.
>
> 2.  The Service recognizes that compromise on
> these grounds will often raise the issue of
> disparate treatment of taxpayers who can pay
> in full and whose liabilities arose under
> substantially similar circumstances.  Taxpayers
> seeking compromise on this basis bear the burden of
> demonstrating circumstances that are compelling
> enough to justify compromise notwithstanding this
> inherent inequity.
>
> 3.  Compromise on public policy or equity grounds
> is not authorized based solely on a
> taxpayer's belief that a provision of the tax
> law is itself unfair.  Where a taxpayer is
> clearly liable for taxes, penalties, or
> interest due to operation of law, a finding
> that the law is unfair would undermine the

---

[13]The IRM provisions set out above are from the version applicable as of May 15, 2004, covering the period when the Appeals officer determined that rejection of petitioner's OIC should be sustained.

> will of Congress in imposing liability under
> those circumstances.

Examples provided in the IRM of instances where compromises sought on grounds of inequity would <u>not</u> promote effective tax administration and should be rejected include a taxpayer's claim that a tax liability resulting from discharge of indebtedness rather than from wages is inequitable, or the claim of a taxpayer-partner that his tax liability arising from a TEFRA partnership-level proceeding is unfair because it is due to the actions of the tax matters partner.  <u>Id.</u>

The 2004 Appeals case memo states as follows with respect to petitioner's compliance history:

> The taxpayer did not file income tax returns for 1999
> through 2002 until after he received an SFR [substitute for
> return] statutory notice of deficiency on the 1999 period on
> 4-16-03; he subsequently filed returns for all 4 periods on
> 6-16-03.  The 2000 through 2002 returns, which reflected
> overpayments, were processed prior to the posting of the
> 1999 balance due assessment * * * .

We conclude that there is no genuine issue of material fact concerning whether petitioner's compliance history as raised in the Form 656 attachment was considered in the 2004 administrative proceeding.[14]

---

[14]Moreover, the 2004 Appeals case memo did not cite petitioner's noncompliance as a factor in sustaining the rejection of his OIC.  See sec. 301.7122-1(c)(3)(ii), Proced. & Admin. Regs.

The 2004 Appeals case memo states as follows with respect to economic hardship:

> The taxpayer is 45 years old and single, with no dependents. He is a computer software engineer; he indicated that he was unemployed at the time he completed the Collection Information Statement, but during the appeals conference he stated that he was doing free-lance consulting work which was generating income.

> *    *    *    *    *    *    *

> The COIC [Centralized Offer in Compromise] Examiner did not verify the taxpayer's financial information, but completed a "Full Pay Worksheet" based on the taxpayer's own figures from his CIS [Collection Information Statement].  This indicated that the taxpayer had NRE [net realizable equity] of $208,486.  This consisted of $149,520 NRE in real property; $45,778 in brokerage and investment accounts; and $13,188 in vehicle equity (2 vehicles).

> *    *    *    *    *    *    *

> As for the economic hardship factors, the taxpayer really raises nothing more than his assertion that if the tax is not compromised, he will be forced to sell his house in order to pay his mother back the $56,000 that he borrowed from her.  Both the COIC Examiner and I explained to the taxpayer that imminent seizure of his house was not contemplated, and the COIC Examiner suggested that while the taxpayer was unemployed, the liability could be reported as currently not collectible, after the filing of a notice of federal tax lien. * * * But there is no reason that the unsecured loan from the taxpayer's mother should be considered as having a priority over the tax liability for purposes of an OIC analysis.  The taxpayer is also relatively young, has no children, and has no health problems--all factors generally considered in determining if economic hardship criteria have been met.

We conclude there is no genuine issue of material fact concerning whether petitioner's economic hardship as raised in the Form 656 attachment was considered in the 2004 administrative proceeding.

The 2004 Appeals case memo states as follows with respect to the Form 656 attachment's explanation of petitioner's reasons that his OIC based on effective tax administration should be accepted:

> As for the equity considerations, the taxpayer claims only that it is not fair that he can't use his stock losses in later years to immediately and fully offset the gains he experienced in 1999, and he complains that IRC §422 is difficult to understand.  Per IRM 5.8.11.2.2(3), compromise on public policy or equity grounds is not authorized based solely on a taxpayer's belief that a provision of the tax law is itself unfair.  Where a taxpayer is clearly liable for taxes, penalties, or interest due to operation of law, a finding that the law is unfair would undermine the will of Congress in imposing liability under those circumstances.

The 2004 Appeals case memo demonstrates that the 2004 Appeals officer was aware of petitioner's argument in the Form 656 attachment that his inability to offset 1999 capital gains with 2000 capital losses should constitute effective tax administration grounds for compromising his liability.  The Appeals officer did not accept the argument, but her failure to do so in these circumstances does not show that she failed to adequately consider it.  Instead, her decision to reject such a ground reflects a straightforward application of IRM pt. 5.8.11.2.2(3), to the effect that a nonhardship effective tax administration compromise is not authorized where it is based solely on the taxpayer's claim that the tax law itself is unfair, as compromise of the tax in such circumstances would thwart the will of Congress.  Congress first enacted a capital loss

carryforward for individuals in 1938, see Revenue Act of 1938, ch. 289, sec. 117(e), 52 Stat. 502,[15] but Congress has not provided for a capital loss carryback, the principal unfairness identified by petitioner as grounds for an effective tax administration compromise.  See secs. 1212(b), 172(d)(2)(A); see also Merlo v. Commissioner, 126 T.C. 205 (2006), affd. 492 F.3d 618 (5th Cir. 2007).  We conclude that there is no genuine issue of material fact and that respondent is entitled to summary judgment on the issue of whether petitioner's capital loss carryback argument was "considered" in a previous administrative proceeding within the meaning of section 6330(c)(4).

The same considerations apply with respect to petitioner's contentions that section 422 is too complex.  In the Form 656 attachment, petitioner cited in support of his OIC a 1987 incident where he contends that his inability to understand section 422 rendered him unable to negotiate effectively with a former employer who would not allow him to exercise the most valuable of certain incentive stock options he had been granted pursuant to that employment.  The Appeals case memo's reference to petitioner's complaint that section 422 is difficult to understand demonstrates that the 2004 Appeals officer was aware of petitioner's section 422 argument.  Her refusal to treat the

---

[15]The capital loss carryforward provision for individuals is currently codified as sec. 1212(b).

argument as grounds for an effective tax administration
compromise does not support any inference that she failed to
consider it; rather, her treatment reflects a straightforward
application of IRM pt. 5.8.11.2.2(3).  Moreover, the 1987
incentive stock options incident did not result in the 1999
income tax liability for which petitioner was seeking compromise.
We conclude that there is no genuine issue of material fact and
that respondent is entitled to summary judgment on the issue of
whether petitioner's section 422 complexity argument was
"considered" in a previous administrative proceeding within the
meaning of section 6330(c)(4).

The Appeals case memo does not mention the argument in the
Form 656 attachment concerning the settlement dates of
petitioner's 1999 stock sales; i.e., petitioner's contention that
the unfairness of his inability to offset his 1999 capital gains
with his 2000 capital losses is exacerbated by the fact that the
settlement dates for his 1999 stock sales occurred in 2000.
Viewing the silence of the Appeals case memo in the light most
favorable to petitioner, we draw the inference that the Appeals
officer failed to consider the settlement date argument.  But any
failure of the Appeals officer or, subsequently, the CDP hearing
officer,[16] to consider the settlement date argument was harmless

---

[16]We assume arguendo for purposes of deciding respondent's
motion that if the settlement date argument was not considered at
(continued...)

error.   The Internal Revenue Service's use of the trade date,
rather than the settlement date, as the date of a stock sale for
Federal income tax purposes follows expressed congressional
intent.   See Rev. Rul. 93-84, 1993-2 C.B. 225 (citing S. Rept.
99-313, at 131 (1986), 1986-3 C.B. (Vol. 3) 1, 131, and H. Conf.
Rept. 99-841 (Vol. II), at II-297 (1986), 1986-3 C.B. (Vol. 4) 1,
297).   Thus, any claim by petitioner that the use of his 1999
trade dates rather than his 2000 settlement dates created
unfairness justifying an effective tax administration compromise
would also clearly run afoul of IRM pt. 5.8.11.2.2(3).   Since the
settlement date argument would not have provided any basis for an
effective tax administration compromise, any failure to consider
the argument in the 2004 administrative proceeding or in the CDP
hearing would not have affected the outcome of either and is not
a bar to summary judgment.

        Finally, the Appeals case memo did not reference
petitioner's AMT argument to the effect that a portion of his
effective tax administration compromise should be based on his
having earlier paid AMT when he exercised incentive stock options
to acquire the stock whose sale in 1999 generated the tax
liability petitioner sought to compromise.   Petitioner considered

--------

[16](...continued)
the 2004 administrative proceeding, it would have been preserved
for consideration at petitioner's CDP hearing with respect to the
lien.

the earlier AMT liability and the subsequent capital gains tax liability arising from the same stock to constitute unfair double taxation that should support effective tax administration relief under section 7122.  As with petitioner's settlement date argument, we draw the inference most favorable to petitioner that the Appeals case memo's silence regarding petitioner's AMT argument indicates that the Appeals officer failed to consider it.

However, we have previously considered and rejected the claim that the tax liability arising from the treatment of incentive stock options under the AMT regime should be eliminated on fairness grounds through an effective tax administration compromise of the liability pursuant to section 7122.  See Speltz v. Commissioner, 124 T.C. 165 (2005), affd. 454 F.3d 782 (8th Cir. 2006).  In Speltz, the taxpayers, like petitioner, argued that an Appeals officer had "'failed to properly consider'", and had abused his discretion in rejecting, their ETA offer premised on the "'unintended and unfair'" tax liability caused by the treatment of incentive stock options under the AMT.[17]  Id. at

_____

[17]The taxpayers in Speltz v. Commissioner, 124 T.C. 165 (2005), affd. 454 F.3d 782 (8th Cir. 2006), had incurred a substantial AMT liability upon the exercise of incentive stock options, only to have the acquired stock decline precipitously in value before it was sold.  In contrast, petitioner incurred a modest AMT liability when he exercised incentive stock options, and he then sold the acquired stock in 1999 at a substantial gain.

175.  Concluding that a compromise of the liability pursuant to section 7122 was not appropriate, we observed:

> Accepting petitioners' position would result in nullification of a portion of the statutory scheme [for the taxation of incentive stock options] by administrative or judicial action.  We cannot conclude that section 7122 gives the Court a license to make adjustments to complex tax laws on a case-by-case basis. * * * Moreover, we cannot conclude that it is an abuse of discretion for the Appeals officer to decline to do so.  In this case, we conclude that the Appeals officer correctly applied the provisions of the regulations and of the Internal Revenue Manual, specifically those portions cautioning against granting relief based on inequity where to do so would undermine congressional intent. [Id. at 178-179.]

Because petitioner's AMT argument would not have constituted proper grounds for acceptance of an ETA offer, any failure by the 2004 Appeals officer or, subsequently, the CDP hearing officer, to consider it was harmless error.  Since petitioner's AMT argument would not have provided any basis for an effective tax administration compromise, any failure to consider the argument in the 2004 administrative proceeding or in the CDP hearing would not have affected the outcome of either and is not a bar to summary judgment.

The Appeals case memo demonstrates that the 2004 Appeals officer considered petitioner's compliance history and economic hardship issues raised in the Form 656 attachment and concluded that petitioner had not shown economic hardship (and did not treat his compliance history as an adverse factor).  The Appeals case memo further demonstrates that the 2004 Appeals officer

considered the capital loss carryback and section 422 arguments raised in the Form 656 attachment as grounds for petitioner's OIC, and rejected them as inadequate grounds for a nonhardship effective tax administration compromise, pursuant to IRM pt. 5.8.11.2.2(3). As for petitioner's remaining arguments in the Form 656 attachment, even if it is assumed that the 2004 Appeals officer did not consider petitioner's settlement date or AMT arguments, these arguments are so clearly precluded by IRM pt. 5.8.11.2.2(3) as grounds for an ETA offer that any failure to consider them was harmless error. After a careful review of petitioner's explanation of his OIC in the Form 656 attachment, we find that he advanced no other arguments.

Petitioner's principal grievance concerns his inability to carry back a capital loss from 2000 to offset a capital gain for 1999. Allowing him to do so would nullify the statutory scheme for capital losses that has been in place for over 70 years. Given the now widely recognized performance of high technology stocks over 1999 and 2000, there is every reason to believe that petitioner's experience was not an isolated one. Granting petitioner an effective tax administration compromise of his liabilities on this ground would give him disparate treatment as compared to similarly situated taxpayers without a compelling justification, in contravention of the guidance in the regulations and the IRM. See sec. 301.7122-1(b)(3)(ii), Proced.

& Admin. Regs.; IRM pt. 5.8.11.2.2(2). The same can be said for petitioner's grievances with respect to the treatment of incentive stock options under the AMT regime, the complexity of section 422 generally, and the use of trade rather than settlement dates for establishing the timing of a capital gain or loss. Each represents a claim that a provision of the tax law is unfair. The 2004 Appeals officer's rejection of petitioner's grounds for an effective tax administration compromise does not demonstrate a lack of "consideration" of the issue; her decision reflects adherence to the regulations and IRM. See Speltz v. Commissioner, supra at 178-179. We accordingly conclude that respondent is entitled to summary judgment on the issue of whether the OIC petitioner sought to raise in his CDP hearing was "considered" in a previous administrative proceeding within the meaning of section 6330(c)(4)(A).

The remaining issue is whether petitioner "participated meaningfully" in the previous administrative proceeding within the meaning of section 6330(c)(4)(B). Petitioner contends in his objection to respondent's motion that the 2004 Appeals officer "hung up the phone on me as I pleaded for a hearing". The officer's entries in the Appeals case activity records confirm that she hung up on petitioner, though her entries reflect that she did so after petitioner insisted on going over his Form 656 attachment line by line and she had advised him that all relevant

issues had been discussed, in her view.  We do not resolve the participants' versions of these events for purposes of summary judgment.  Instead, petitioner's submission of the detailed Form 656 attachment, which is undisputed, and the 2004 Appeals case memo, which establishes that the 2004 Appeals officer reviewed the Form 656 attachment, are sufficient standing alone to demonstrate that petitioner "participated meaningfully" in the 2004 administrative proceeding within the meaning of section 6330(c)(4)(B).  Respondent is entitled to summary judgment in his favor on that issue.

Since we conclude that respondent is entitled to summary judgment in his favor on the issues of whether the OIC that petitioner sought to raise at his CDP hearing had been "raised" and "considered" at a previous administrative proceeding in which petitioner "participated meaningfully" within the meaning of section 6330(c)(4), it follows that respondent is entitled to summary judgment in his favor on the issue of whether the CDP hearing officer's refusal, pursuant to section 6330(c)(4), to consider petitioner's OIC at his CDP hearing was proper.  As the rejection of his OIC was the sole issue petitioner raised at his CDP hearing, it further follows that respondent is entitled to judgment as a matter of law that the lien at issue in this case may be maintained.

To reflect the foregoing,

An appropriate order and

decision will be entered.