T.C. Memo. 2015-182

UNITED STATES TAX COURT

LESLEY ROBERTS THOMAS, Petitioner <u>v.</u>
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 12031-13L.                    Filed September 16, 2015.

<u>Shiny R. Pappy</u> and <u>Melissa A. Purvis</u>, for petitioner.

<u>Ann Louise Darnold</u>, for respondent.

MEMORANDUM OPINION

PARIS, <u>Judge</u>:  This case is before the Court on a petition for review of a

Notice of Determination Concerning Collection Action(s) Under Section 6320

and/or 6330,[1] dated May 1, 2013, for petitioner's taxable years 2003 and 2004

---

[1]Unless otherwise indicated, all section references are to the Internal
Revenue Code in effect at all relevant times, and all Rule references are to the Tax

(continued...)

[*2] (notice of determination). On July 15, 2014, respondent filed a motion for summary judgment under Rule 121, requesting the Court uphold, as a matter of law, his determination to sustain collection by levy of petitioner's Federal income tax liabilities for 2003 and 2004. On the basis of the following, the Court will grant respondent's motion for summary judgment.

Background

The record reflects or the parties do not dispute the following. Petitioner resided in Oklahoma County, Oklahoma, at the time of filing her petition. On May 20, 2010, petitioner filed late Federal income tax returns for 2003 and 2004. For each year she filed as single and reported an income tax liability. Petitioner did not pay any of the accrued liabilities due and owing at the time she filed her 2003 and 2004 tax returns. Respondent subsequently assessed the tax and related interest, additions to tax for failure to pay estimated tax, additions to tax for failure to timely file, and additions to tax for failure to timely pay for each year.

On July 12, 2010, respondent issued petitioner a statutory notice of balance due and demand for payment for her 2003 and 2004 tax liabilities. On October 30, 2010, petitioner and respondent entered into an installment agreement for those

---

[1](...continued)
Court Rules of Practice and Procedure.

[*3] liabilities. On November 5, 2010, respondent filed a notice of Federal tax lien and on November 9, 2010, issued a Notice of Lien Filing and Right to Collection Due Process Hearing. Petitioner did not request a collection due process (CDP) hearing.[2]

On February 13, 2012, respondent terminated petitioner's installment agreement because she had made only one payment of $500 toward her 2003 income tax liability and no payments toward her 2004 income tax liability.

On July 23, 2012, respondent issued to petitioner a Final Notice of Intent to Levy and Notice of Your Right to a Hearing for 2003 and 2004, reflecting accrued income tax liabilities of $49,235.10 (levy notice). The levy notice informed petitioner of her right to a CDP hearing if she disagreed with the proposed levy action.

On August 3, 2012, respondent timely received petitioner's Form 12153, Request for a Collection Due Process or Equivalent Hearing (CDP request). On her CDP request petitioner checked the boxes for an installment agreement, an offer-in-compromise (OIC), and inability to pay as collection alternatives to the proposed levy action. Petitioner offered as her reason: "We feel as though there is

---

[2]Even though petitioner had entered into an installment agreement for her 2003 and 2004 income tax liabilities, respondent filed a lien on her accounts six days later. However, the current status of the lien is not before the Court.

[*4] a better resolution to the liability." Petitioner also submitted an OIC with her CDP request (August 3, 2012, OIC) but did not include the 20% initial payment or the filing fee. Petitioner's August 3, 2012, OIC offered a lump-sum cash payment of $100 for her 2003 and 2004 income tax liabilities on the basis of doubt as to collectibility and financial hardship.

I.     November 27, 2012, CDP Hearing

The Internal Revenue Service (IRS) Office of Appeals (Appeals) in Memphis assigned petitioner's case to Settlement Officer Patty Johnson (SO Johnson) and issued to petitioner a letter dated September 28, 2012, confirming that Appeals had received her CDP request for 2003 and 2004 and providing information on the Appeals process.

On October 16, 2012, Memphis Appeals received a joint OIC from petitioner and Brian Thomas, petitioner's spouse (collectively, Thomases), for 2005, 2006, 2007, 2008, and 2009 (October 16, 2012, OIC).[3] The Thomases'

---

[3]The May 29, 2013, petition on which this case is based was filed in the names of Brian Thomas and Lesley Roberts Thomas and listed the years for which notices were issued as 2005, 2006, 2007, 2008, and 2009. On July 29, 2013, respondent filed a motion to dismiss for lack of jurisdiction and to strike as to the taxable years 2005, 2006, 2007, 2008, and 2009 and as it relates to Brian Thomas. Respondent's motion states that no notice for Brian Thomas was issued for 2003 and 2004, nor was a notice issued to the Thomases for 2005, 2006, 2007, 2008, and 2009 that would confer jurisdiction on the Court. Respondent filed a

(continued...)

[*5] October 16, 2012, OIC offered a periodic payment of $383.66 for 24 months, totaling $9,207, on the basis of doubt as to collectibility and financial hardship for joint income tax liabilities of $348,114.90. They also submitted a Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals.

On Form 433-A, the Thomases stated that, as of August 31, 2012, they were self-employed real estate agents and had been for five years. They provided the name of their real estate business as Canty, Inc., but did not provide the name of their other real estate business, Thomas Properties, LLC. According to their Form 433-A the Thomases owned the following assets:

- $8,824.66 in cash on hand, including personal checking accounts;

- a primary residence in Oklahoma with a fair market value (FMV) of $320,650, an outstanding loan balance of $289,094, and a monthly payment of $1,750;

- a mobile home at Lake Texhoma with a FMV of $479;

---

[3](...continued)
supplement to his motion on August 13, 2013. The Court dismissed for lack of jurisdiction Brian Thomas and taxable years 2005, 2006, 2007, 2008, and 2009 and struck those references from the petition. On December 18, 2013, respondent answered the petition and attached to his answer the notice of determination on which this case is based. As a result, only petitioner's tax liabilities for 2003 and 2004 are before the Court.

**[*6]** - a rental home in Oklahoma with a FMV of $224,252, an outstanding loan balance of $186,453.16;

- a 2010 Ford pickup purchased in 2010 with a FMV of $30,500, an outstanding loan balance of $32,010.80, and a monthly payment of $823.46;

- a 2012 BMW X5 leased in 2011 (sic) with a monthly lease payment of $1,056.[4]

The Thomases reported gross monthly business income of $52,253.50 and monthly business expenses of $39,678.80, resulting in $12,574.70 of net monthly business income.[5] They also reported a net monthly rental property loss of $248.68 but did not deduct that amount to determine their monthly household income. The Thomases reported $13,033.19 in household expenses, leaving their remaining monthly income at negative $458.49.

SO Johnson sent petitioner a letter dated November 3, 2012, scheduling a CDP hearing for November 27, 2012, and informing her that to consider collection alternatives SO Johnson would need a completed Form 433-A and/or a Form 433-B, Collection Information Statement for Businesses, seven days before the CDP

---

[4]The Thomases listed a boat payment and lake slip and lot rent as "Other Expenses" totaling $1,475 but did not include a boat as an asset on Form 433-A.

[5]For specific business expenses, Form 433-A stated "SEE-ATTACHED", but the only attachments in the record are a list of the Thomases' personal expenses and Thomas Properties, LLC's profit and loss statement from January 1 through June 30, 2012.

**[*7]** hearing. The letter also informed petitioner that all Federal tax returns had to be filed.

On November 27, 2012, SO Johnson and the Thomases' representative[6] held a telephone CDP hearing. SO Johnson informed the representative that none of the requested documents had been received. The representative stated that an OIC had been filed. SO Johnson reviewed the automated OIC system but found only the Thomases' October 16, 2012, OIC. SO Johnson determined that petitioner's case should be transferred to Appeals in Oklahoma City and telephoned the representative to inform her that it would be transferred there. The representative offered to fax the OIC package to SO Johnson and informed her that petitioner's OIC had been included in the package sent to the centralized OIC unit. On December 11, 2012, SO Johnson received petitioner's OIC case file, which included the August 3, 2012, OIC and sent it to Appeals in Oklahoma City.

## II.  March 26, 2013, CDP Hearing

Appeals in Oklahoma City assigned petitioner's case to Settlement Officer M. Kathy Howe (SO Howe) and sent a letter dated January 7, 2013, confirming

---

[6]Various individuals at Black Fin IRS Solutions/Roderick H. Polston, PC represented the Thomases during the Appeals process and before the Court. For ease, the Court will refer to them generally as one representative.

**[\*8]** that Appeals had received petitioner's case for 2005, 2006, 2007, 2008, and 2009[7] and providing information on the Appeals process. SO Howe performed a preliminary review of petitioner's case file and discovered that the August 3, 2012, OIC was not processed because petitioner had not signed the form or submitted the required filing fee and the initial payment. SO Howe telephoned the representative, informed her of the defects, and warned her that the August 3, 2012, OIC could not be considered without petitioner's signature, the required filing fee, and the initial payment. SO Howe received petitioner's corrected OIC for 2003 and 2004 on January 9, 2013 (January 9, 2013, OIC), offering a lump-sum payment of $100 and including checks for the initial payment and the required filing fee.

On January 9, 2013, after conducting an initial review of their OICs, SO Howe sent a letter warning the Thomases that the periodic payments on the October 16, 2012, OIC had not been made and failure to pay would result in a mandatory withdrawal of the offer. The letter also informed the Thomases that they were delinquent in filing their Forms 1120S, U.S. Income Tax Return for an S Corporation, for their real estate company--Canty, Inc.--for 2008, 2009, and 2011. SO Howe gave the Thomases until January 22, 2013, to comply with their periodic

---

[7]Appeals did not include petitioner's case for 2003 and 2004 in the letter.

[*9] payment and corporate return filing obligations. SO Howe attached to the January 9, 2013, letter 14 items requiring verification as well as a "rough" asset equity table based on the information provided from the Thomases' Forms 433-A and 433-B.[8]

SO Howe sent another letter dated January 16, 2013, stating: "Please disregard my prior correspondence as I have determined that I will investigate your offer rather than relying on collection field assistance." She requested that the Thomases provide documents or answers to 13 items relating to their businesses and assets by February 6, 2013.

The representative sent SO Howe a letter dated January 21, 2013, in response to the January 9, 2013, letter and attached several documents. The representative claimed that the Thomases had made all payments on the October 16, 2012, OIC and provided documentation and U.S. Postal Service tracking information for the December 2012 and January 2013 payments.

Even though Canty, Inc., had been registered as a business in the State of Oklahoma for 2008, 2009, and 2011, the representative explained in the letter that

---

[8]The record contains three Forms 433-B: one for Canty, Inc., received on January 22, 2013; one for Thomas Properties, LLC, signed on February 13, 2013; and one for Canty, Inc., signed February 14, 2013. The record does not contain a Form 433-B dated before January 9, 2013, for either business.

**[\*10]** the Thomases operated it as a sole proprietorship in 2008 and 2009. She attached the Thomases' unsigned and undated Forms 1040, U.S. Individual Income Tax Return, with attached Schedules C, Profit or Loss From Business, for 2008 and 2009. She also attached Canty, Inc.'s unsigned and undated Form 1120S with corresponding Schedules K-1, Shareholder's Share of Income, Deductions, Credit, etc., and Form 4562, Depreciation and Amortization, for 2011. Petitioner's Schedule K-1 for 2011 reported a 50% ownership interest in Canty, Inc., and income of $98,974. As to the filing of Form 1120S, the representative informed SO Howe that she "verified with the practitioner priority services that the 2011 tax return had in fact been filed and processed."

By letter dated February 6, 2013, the representative responded to SO Howe's January 16, 2013, letter providing all 13 items of information requested. In addition to other items, she provided the following information.[9]

- Ownership interests:
    - Thomas Properties, LLC: "Mr. and Mrs. Thomas are the owners of this business. The purpose of this business is for a rental property they own at 2012 Thomas Trail."
- Lake property and mobile home:
    - "Mr. and Mrs. Thomas do not own the land where the lake house is located. * * * [T]he mobile home is not fixed to the

[9]The representative referenced documents attached to the letter, but there were no documents attached to the copy provided to the Court.

**[*11]** property.  The mobile home is a 1972 Premier 12' X 70'
mobile home.  * * * The value * * * is approximately
$1,500."
- Water craft:
- "The boat the Mr. and Mrs. Thomas have is not currently
owned by them."

SO Howe sent petitioner a letter dated February 25, 2013, scheduling her CDP hearing for March 26, 2013, and informing her that there was still no record of her filing the 2011 Form 1120S for Canty, Inc.  After reviewing petitioner's submitted information, SO Howe conducted an analysis of petitioner's equity in assets and her monthly ability to pay.  She found that petitioner operated a business and earned more than $100,000 individually a year.  The Thomases reported $212,948 in adjusted gross income on their 2011 Form 1040.  After subtracting the Thomases' allowable reported expenses, she calculated that from their monthly disposable income alone they could, over time, afford to pay $528,864 towards their liabilities or $5,509 a month for 96 months (the remaining months in the period of limitations on collection).  SO Howe also calculated that the Thomases had net realizable equity of $32,529 and a reasonable collection potential of $561,393.  SO Howe concluded that the Thomases could pay their tax liabilities in full and that they did not qualify for an OIC on the basis of doubt as to collectibility.

**[\*12]** SO Howe's analysis, which was attached to the February 25, 2013, letter, included four tables: an asset/equity table, an income and expense table for the Thomases, an income and expense table for Canty, Inc., and an income and expense table for Thomas Properties, LLC. The asset/equity table included the following items:

| Assets | FMV | QSV | Encumb\Exemp | Equity |
|---|---|---|---|---|
| Bank accounts | $8,824 | $8,824 | Less $1,000 + one month living expenses | $933 |
| Primary residence[1] | $334,780 per county assessor; $350,000 per 2012 mtg. loan app. | 280,000 | $289,094 | -0- |
| Mobile home | 1,500 | 1,200 | -0- | 1,200 |
| Vehicles | 30,500 | 24,400 | 32,011 | -0- |
| 1996 Sea Ray 370 Sundancer | 59,000 | 47,200 | Amortized at $30,631 | 16,569 |
| Owners' equity in Canty, Inc.[2] | Treated as income source only | -0- | -0- | -0- |
| Owners' equity in Thomas Properties, LLC; business real property[2] | $224,252 per county assessor; $250,000 per 2012 mtg. loan app. | 200,000 | 186,173 | 13,827 |
| Total asset equity | | | | 32,529 |
| Value of future ability to pay | | | | 528,864 |
| Total reasonable collection potential | | | | 561,393 |

[1]Petitioner purchased her primary residence with Mr. Thomas in 2010 for $320,000, incurring the additional mortgage and utilities expenses at a time when they owed substantial tax liabilities.
[2]Petitioner is a 50% shareholder.

SO Howe calculated the value of the Thomases' future ability to pay from the amounts they reported on the Form 433-A for income and expenses and then applied the local and national expense standards. She allowed a loan payment that

- 13 -

[*13] would ordinarily not qualify as an allowable expense to illustrate that the Thomases would still be able to pay their tax liabilities in full within the period of limitations on collection. The income and expenses table included the following items:

| Income | Amount claimed | Amount allowed |
|---|---|---|
| Gross wages--petitioner | --- | $625 |
| Gross wages--Mr. Thomas | --- | 625 |
| Rental income | ($249) | 12 |
| Corporate distributions | 12,575 | 14,467 |
| Total income | 12,326 | 15,729 |
| Expenses | | |
| National standard | 1,227 | 1,227 |
| Housing and utilities | 2,804 | 1,465 |
| Vehicle payment 1 | 823 | 517 |
| Vehicle payment 2 | 1,056 | 517 |
| Vehicle operating costs | 488 | 488 |
| Health insurance | 784 | 784 |
| Out-of-pocket medical | 180 | 180 |
| Taxes (on income) | 4,170 | 4,170 |
| Loan to pay State taxes | 872 | 872 |
| Boat payment | 1,000 | -0- |
| Lake slip & lot rent | 475 | -0- |
| Total expenses | 13,879 | 10,220 |
| Monthly disposable income | (1,553) | 5,509 |

The representative sent SO Howe a letter dated March 12, 2013, "to clarify a few things". The representative did not dispute the income and asset analysis

[*14] but offered two different calculations for an OIC using SO Howe's analysis. She based her calculations on the "fresh start" guidelines issued by the IRS in 2012. The first OIC calculation was for a cash offer of $98,637, which included monthly disposable income multiplied by 12 months plus total asset equity (($5,509 × 12) + $32,529). The second OIC calculation was for a periodic payment offer of $164,745, which included monthly disposable income multiplied by 24 months plus total asset equity (($5,509 × 24) + $32,529).

On March 26, 2013, a telephone CDP hearing was held between the representative and SO Howe. During the CDP hearing the representative insisted that her calculations showed that the Thomases qualified for an OIC. SO Howe explained that the formulas the representative used for petitioner's OIC calculations applied only after Appeals could confirm that the Thomases could not pay in full within the period of limitations on collection. The representative requested that the full amount of housing, boat, and slip expenses be allowed. SO Howe stated that she would run her installment agreement software program to determine whether allowing the expenses for one year would still result in a full payment of the tax liabilities.

SO Howe ran the installment agreement software program after the CDP hearing and determined that the boat and slip payments were still not allowable

[*15] expenses. On March 26, 2013, SO Howe faxed the representative a letter informing the representative of her findings and requesting that the Thomases commit to the proposed installment agreement of $5,509 a month no later than April 9, 2013.

On April 11, 2013, the representative called SO Howe again to discuss a deviation from the local housing standards for allowed housing expenses. The representative asserted for the first time that the Thomases qualified for an OIC on the basis of effective tax administration. The representative and SO Howe could not reach an agreement on an installment agreement or an OIC.

Respondent issued the notice of determination to petitioner on May 1, 2013, sustaining the proposed collection by levy for tax years 2003 and 2004. Petitioner timely petitioned the Court to review respondent's determination.

On July 15, 2014, respondent filed a motion for summary judgment and attached thereto exhibits and a declaration by SO Howe. The Court ordered petitioner to file a response to respondent's motion on or before August 8, 2014. No response was filed. The Court scheduled a conference call by order; counsel for petitioner failed to participate or contact the Court to reschedule. The Court then calendared respondent's motion for hearing at the September 15, 2014, Oklahoma City, Oklahoma, trial session of the Court.

**[\*16]** A hearing was held on September 15, 2014, at which the parties appeared and were heard. This case was recalled on September 18, 2014, at which time counsel for petitioner appeared and filed a response to respondent's motion for summary judgment. Petitioner contends in her response that respondent erred by: (1) not accepting her OIC on grounds of effective tax administration, (2) failing to consider the "unique necessity the petitioner, a realtor, has in driving clients in a vehicle that requires a deviation from national standards", and (3) determining to proceed with collection action on her unpaid income tax liabilities. On October 20, 2014, respondent filed a reply to petitioner's response to respondent's motion for summary judgment.

## Discussion

Respondent moved for summary judgment in his favor upon all legal issues in controversy. The Court grants summary judgment "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits or declarations, if any, show that there is no genuine dispute as to any material fact" and that the moving party is entitled to judgment in its favor as a matter of law. Rule 121(b); Naftel v. Commissioner, 85 T.C. 527, 529 (1985); see also Elec. Arts, Inc. v. Commissioner, 118 T.C. 226, 238 (2002).

[*17] When ruling on a motion for summary judgment, the Court will consider all facts and inferences drawn therefrom in the light most favorable to the nonmoving party. Naftel v. Commissioner, 85 T.C. at 529. The nonmoving party may not rest upon the allegations or denials in her pleadings but must set forth specific facts showing there is a genuine dispute for trial. Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), aff'd, 17 F.3d 965 (7th Cir. 1994). While petitioner states in her response that "there are triable issues of material fact", she asserts only that SO Howe abused her discretion in relation to the agreed-upon facts. Respondent has shown that there is no genuine issue for trial, and petitioner has failed to demonstrate otherwise by affidavits or other acceptable materials. Therefore, there are no disputes as to any material fact, and a decision may be rendered as a matter of law. See Rule 121(d).

I.     Sections 6330 and 6331

Section 6331(a) authorizes the Secretary to levy against property and property rights where a taxpayer liable for taxes fails to pay those taxes within 10 days after notice and demand for payment. Section 6331(d) requires the Secretary to send the taxpayer written notice of the Secretary's intent to levy, and section 6330(a) requires the Secretary to send the taxpayer written notice of his right to a section 6330 hearing at least 30 days before any levy. Murphy v. Commissioner,

**[*18]** 125 T.C. 301, 307 (2005), aff'd, 469 F.3d 27 (1st Cir. 2006). Respondent sent petitioner a levy notice on July 23, 2012.

If a section 6330 hearing is requested, the hearing is to be conducted by Appeals; and at the hearing the Appeals officer conducting it must verify that the requirements of any applicable law or administrative procedure have been met. Sec. 6330(b)(1), (c)(1). The taxpayer may raise at the hearing any relevant issue relating to the unpaid tax or the proposed levy. Sec. 6330(c)(2)(A).

Following a CDP hearing the Appeals officer must determine whether to sustain the proposed collection action. In making that determination, section 6330(c)(3) requires the Appeals officer to consider: (1) whether the requirements of any applicable law or administrative procedure have been met; (2) any issues appropriately raised by the taxpayer; and (3) whether the proposed levy balances the need for the efficient collection of taxes and the legitimate concern of the taxpayer that any collection action be no more intrusive than necessary. Lunsford v. Commissioner, 117 T.C. 183, 184 (2001). Once an Appeals officer makes a determination, the taxpayer may appeal the determination to the Tax Court. Sec. 6330(d)(1).

In reviewing the determination, the Court has held that where the validity of the underlying tax liability is properly at issue, the Court will review the matter on

[*19] a de novo basis. Sego v. Commissioner, 114 T.C. 604, 610 (2000); Goza v. Commissioner,114 T.C. 176, 181-182 (2000). Where the validity of the underlying tax liability is not properly placed at issue, the Court will review the determination for abuse of discretion. Sego v. Commissioner, 114 T.C. at 610; Goza v. Commissioner, 114 T.C. at 181-182. Petitioner has not challenged her underlying liabilities. Accordingly, the Court reviews Appeals' determination for abuse of discretion. See Sego v. Commissioner, 114 T.C. at 610.

II.     Abuse of Discretion

The Court does not conduct an independent review of what would be an acceptable OIC. See Murphy v. Commissioner, 125 T.C. at 320. If the Appeals officer follows all statutory and administrative guidelines and provides a reasoned, balanced decision, the Court will not reweigh the equities. Link v. Commissioner, T.C. Memo. 2013-53. The extent of the Court's review for abuse of discretion is to determine whether the Appeals officer's decision to reject the OIC actually submitted by the taxpayer was arbitrary, capricious, or without sound basis in fact or law. See Giamelli v. Commissioner, 129 T.C. 107, 111 (2007).

This Court reviews collection actions of the Commissioner only with respect to tax liabilities for which a valid notice of determination has been issued. Sec. 6330(d)(1). Respondent issued a valid notice of determination for collection

[*20] of petitioner's income tax liabilities for 2003 and 2004, and petitioner filed a timely petition. However, the OICs submitted to respondent included proposed compromises for years not included in the notice of determination. In determining whether the rejection of the OICs and collection for the years included in the notice of determination is appropriate, this Court is authorized (as the settlement officer was required) to consider "any relevant issue relating to * * * the proposed levy". Sec. 6330(c)(2)(A), (d). Therefore, the Court evaluates the Appeals officer's exercise of discretion in rejecting the OICs, taking into account all the liabilities that were proposed to be compromised, even though the Court does not have jurisdiction to review proposed collection actions for all those liabilities. See, e.g., Orum v. Commissioner, 123 T.C. 1 (2004) (reviewing an OIC that covered income tax liabilities for tax years both within and outside of this Court's jurisdiction), aff'd, 412 F.3d 819 (7th Cir. 2005); see also Dean v. Commissioner, T.C. Memo. 2009-269.

### A.    Offers-in-Compromise

In a CDP hearing a taxpayer may offer collection alternatives, which may include an OIC or an installment agreement. Sec. 6330(c)(2)(A)(iii). Section 7122(a) authorizes compromise of a taxpayer's Federal income tax liability. Regulations adopted pursuant to section 7122 set forth three grounds for the

[*21] compromise of a liability: (1) doubt as to liability; (2) doubt as to collectibility; or (3) promotion of effective tax administration. Sec. 301.7122-1, Proced. & Admin. Regs. Paragraph (b)(2) of the regulation allows for a compromise to be entered into on doubt as to collectibility where the taxpayer's assets and income are less than the full amount of the liability. Section 301.7122-1(c)(2)(i), Proced. & Admin. Regs., provides that

> [a] determination of doubt as to collectibility will include a determination of ability to pay. In determining ability to pay, the Secretary will permit taxpayers to retain sufficient funds to pay basic living expenses. The determination of the amount of such basic living expenses will be founded upon an evaluation of the individual facts and circumstances presented by the taxpayer's case. To guide this determination, guidelines published by the Secretary on national and local living expense standards will be taken into account.

Generally, under the Commissioner's administrative pronouncements an OIC based on doubt as to collectibility will be acceptable only if the offer reflects the reasonable collection potential of the case (i.e., that amount, less than the full liability, that the IRS could collect through means such as administrative and judicial collection remedies). Rev. Proc. 2003-71, sec. 4.02(2), 2003-2 C.B. 517, 517; see also Murphy v. Commissioner, 125 T.C. at 309. The offer must include all unpaid tax liabilities and periods for which the taxpayer is liable. Internal

**[*22]** Revenue Manual (IRM) pt. 5.8.1.4.1 (Mar. 16, 2010).[10]  In some cases, the Secretary will accept an offer of less than the reasonable collection potential of the case if there are special circumstances.  Rev. Proc. 2003-71, sec. 4.02(2).

Special circumstances are:  (1) circumstances demonstrating that the taxpayer would suffer economic hardship if the IRS were to collect from him an amount equal to the reasonable collection potential of the case or (2) if no demonstration of such hardship can be made, circumstances justifying acceptance of an amount less than the reasonable collection potential of the case on the basis of public policy or equity considerations.  See IRM pt. 5.8.4.2 (June 1, 2010); see also Murphy v. Commissioner, 125 T.C. at 309; Gurule v. Commissioner, T.C. Memo. 2015-61.  To demonstrate that compelling public policy or equity considerations justify a compromise, the taxpayer must be able to demonstrate that, because of exceptional circumstances, collection of the full liability would undermine public confidence that the tax laws are being administered in a fair and equitable manner.  Sec. 301.7122-1(b)(3)(ii), Proced. & Admin. Regs.

---

[10]The Internal Revenue Manual (IRM) does not have the force of law, and it confers no rights upon taxpayers.  Poindexter v. Commissioner, 321 Fed. Appx. 771, 773 (10th Cir. 2009), aff'g T.C. Memo. 2008-99; see also Wheeler v. Commissioner, T.C. Memo. 2006-109, 2006 WL 1391389, at *3 n.9 (noting that the IRM "was designed to aid in the internal administration of the Internal Revenue Service, not for the protection of taxpayers; thus, it is not binding upon and confers no rights to taxpayers").

**[\*23]** B.    Doubt as to Collectibility and Effective Tax Administration

When the reasonable collection potential of the case exceeds the taxpayer's liability, doubt as to collectibility is not a ground for compromise.  Id. subpara. (2).  However, the Secretary may enter into a compromise on the ground of effective tax administration.  Id. subpara. (3).  Before the Secretary will enter into a compromise on the ground of effective tax administration, the taxpayer must show, among other things, that collection in full would cause him economic hardship or, if he cannot, that compelling public policy or equity consideration justify such compromise.  Id.

Petitioner argued in her response to the motion for summary judgment that "respondent erred by not accepting petitioner's offer in compromise on grounds of effective tax administration".  Petitioner submitted three OICs--an incomplete offer for a lump-sum payment on August 3, 2012, a complete offer for periodic payments on October 16, 2012, and a complete offer for a lump-sum payment on January 9, 2013.  On each Form 656, Offer in Compromise, petitioner checked the box for "Doubt as to Collectibility - I have insufficient assets and income to pay the full amount" as the reason for the compromise.  Additionally, petitioner also stated on the explanation of circumstances on each Form 656 that "due to financial hardship, * * * [she is unable] to full pay the liability within * * * [her] lifetime, or

[*24] within the statutes of limitations." Petitioner did not request on Forms 656 that her OICs be accepted under effective tax administration. On April 11, 2013, the representative asserted for the first time that the Thomases qualify for an OIC on the basis of effective tax administration. The representative did not provide either additional information to support a finding for economic hardship or any compelling public policy or equity consideration to justify a compromise under effective tax administration. SO Howe compared the Thomases' situation to the examples in the regulations and concluded that their situation did not support acceptance of the OIC. See sec. 301.7122-1(c)(3)(iii) and (iv), Proced. & Admin. Regs.; see also Sullivan v. Commissioner, T.C. Memo. 2009-4. Therefore, SO Howe did not abuse her discretion; she evaluated petitioner's information and found that the Thomases did not meet the applicable guidelines for acceptance of an OIC on the basis of effective tax administration.

Nor does the Court see any abuse of discretion in SO Howe's decision to reject petitioner's offer of $100 in settlement of her 2003 and 2004 liabilities of $49,235.10 and offer of $9,207.86 in settlement of the 2005 through 2009 liabilities of $348,114.90 on the ground of doubt as to collectibility. SO Howe reviewed petitioner's submitted information before the CDP hearing. She found that petitioner was operating a business and earning more than $100,000

[*25] individually and more than $200,000 jointly a year. After subtracting the Thomases' allowable claimed expenses, she found that from their monthly disposable income alone they could, over time, afford to pay $528,864 towards their liabilities or $5,509 a month for 96 months. SO Howe also calculated that the Thomases had net realizable equity of $32,529, which was more than the $100 petitioner had offered and more than the $9,207.86 the Thomases had offered. She calculated a reasonable collection potential of $561,393. Because the offers were less than the reasonable collection potential SO Howe calculated and petitioner failed to demonstrate special circumstances, the offers were unacceptable under the Commissioner's procedures for the submission and processing of OICs. See Rev. Proc. 2003-71, sec. 4.02(2); see also Murphy v. Commissioner, 125 T.C. at 321; Lindley v. Commissioner, T.C. Memo. 2006-229, aff'd sub nom. Keller v. Commissioner, 568 F.3d 710 (9th Cir. 2009).

      C.     Allowable Expenses Under the IRS' National and Local Standards

Petitioner has challenged SO Howe's use of national and local standards. Section 7122(d)(2)(A) provides that "the Secretary shall develop and publish schedules of national and local allowances designed to provide that taxpayers entering into a compromise have an adequate means to provide for basic living expenses." Section 7122(d)(2)(B) provides that the national and local allowances

[*26] should not be used "to the extent such use would result in the taxpayer not having adequate means to provide for basic living expenses." This Court has sustained the Commissioner's use of the IRS' published national and local allowances as guidelines for basic living expenses in evaluating the adequacy of proposed installment agreements and OICs. See, e.g., Speltz v. Commissioner, 124 T.C. 165, 179 (2005), aff'd, 454 F.3d 782 (8th Cir. 2006).

Allowable expense guidelines are set forth under IRM pt. 5.8.5.22 (Oct. 22, 2010). Allowable expenses include those expenses that meet the necessary expense test. See id. pt. 5.15.1.7 (Oct. 2, 2012). Necessary expenses are those expenses necessary to provide for the production of income and/or for the health and welfare of the taxpayer and his family. Id. The sum of the necessary expenses establishes the minimum amount the taxpayer needs to live. Id.

Petitioner further argued in her response to the motion for summary judgment that she qualified for a special circumstance allowing for a deviation from the standards. Petitioner claimed housing and utilities expenses of $2,804 per month. SO Howe allowed the local standard of $1,465 per month. Petitioner claimed vehicle expenses of $823 and $1,056 per month for two vehicles and $488 per month in vehicle operating costs. SO Howe allowed the national standard of $517 per month per vehicle and the full amount of vehicle operating costs.

**[\*27]** Petitioner also claimed $1,000 per month for a boat payment and $475 per month for a lake slip and lot rent, which SO Howe disallowed.

Petitioner asserted during the CDP hearing that she should be allowed the full amount of housing and utilities expenses but did not provide any special circumstances to demonstrate economic hardship or other supporting information for a deviation from the local standards.  The taxpayer has the burden of providing information to the Appeals officer to justify a departure from the local standards. See Lindley v. Commissioner, T.C. Memo. 2006-229 (no abuse of discretion to use local standards when taxpayer does not make showing that he will be unable to provide for basic living expenses); see also Aldridge v. Commissioner, T.C. Memo. 2009-276.  Petitioner submitted documentation showing her actual expenses, but she did not present information to justify a departure from the local standard allowance.  Further, petitioner purchased a second home in 2010 for $320,000, incurring the additional mortgage and utilities expenses at a time when she owed substantial tax liabilities.  See, e.g., Steinberg v. Commissioner, T.C. Memo. 2006-217.  Therefore, SO Howe did not abuse her discretion in using the local standards set forth in the regulations and the IRM for petitioner's allowable expenses. See Speltz v. Commissioner, 124 T.C. at 179; Lindley v. Commissioner, T.C. Memo. 2006-229.

[*28] Petitioner argued in her response that luxury vehicles are necessary for the production of income in the real estate market and, therefore, a special circumstance allows a deviation from the national standard. The Court agrees that petitioner required a vehicle for the production of income in the real estate market. However, petitioner has not shown that using a vehicle within the national standard allowance would cause economic hardship. Nor has petitioner shown that she requires a specialty vehicle for her real estate business, e.g., a cargo van or a moving truck. Additionally, even if SO Howe allowed the full expense on each vehicle, the Thomases would still have monthly disposable income of $4,664 and a reasonable collection potential of $480,273, which is more than the amounts offered to compromise their tax liabilities. However, the Court does not recalculate petitioner's ability to pay or substitute our judgment for that of the Appeals officer. See Speltz v. Commissioner, 124 T.C. at 179-180; Aldridge v. Commissioner, T.C. Memo. 2009-276. Therefore, SO Howe did not abuse her discretion in using the national and local expense standards in calculating petitioner's reasonable collection potential.

III. Conclusion

SO Howe considered and adjusted the financial information submitted by the Thomases and concluded that they could pay the balance of their tax liabilities

**[*29]** using an installment agreement.  <u>See, e.g.</u>, <u>Orum v. Commissioner</u>, 123 T.C. at 13-14.

Petitioner's arguments that SO Howe should have reached a different conclusion on the basis of financial information presented or that the Court should remand this case to require SO Howe to reach a different conclusion have no merit.  The requirements of applicable law and administrative procedure were met, and the proposed levy action appropriately balanced the need for efficient collection of taxes with petitioner's concerns regarding the intrusiveness of the levy action.  SO Howe's determination to proceed with the proposed collection by levy was not an abuse of discretion.

The Court has considered all arguments made, and, to the extent not mentioned, concludes that they are moot, irrelevant, or without merit.

To reflect the foregoing,

<u>An appropriate order and decision will be entered</u>.